# CHARLESTON

WINGROVE *et al.* v. PUBLIC SERVICE COMMISSION *et al.*

Submitted April 7, 1914.    Decided April 21, 1914.

1. ELECTRICITY—*"Public Service Corporation"*—*Control by Commission.*

   A corporation, organized under a charter authorizing only mining and sale of coal and the exercise of rights incidental to such business, but nevertheless engaged in the work of supplying, from an electrical plant installed and maintained primarily for the operation, by electric power, of its mining machinery and the lighting of its stores, offices and tenement houses, electricity for lighting purposes, to practically all such persons resident within the incorporated town in which its stores and offices are located as apply for such service, at uniform rates of compensation, wiring their buildings for its use and furnishing them fixtures therefor, is a public service corporation within the meaning of the Public Service Corporation act, chap. 150, Code of 1913, and so much of its business as is of such public nature is subject to control and regulation by the Public Service Commission under authority conferred by said act.    (p. 192).

2. SAME—*Public Service Corporations*—*Mandamus.*

   When the Public Service Commission, under a misapprehension as to the law, refuses an applicant relief against a public service corporation to which he is entitled, and the proceeding is transferred to this court by petition under sec. 16 of said act, this court, upon final hearing and decision of the matter in controversy, will suspend the order of the Commission, refusing the relief, and award a peremptory writ of mandamus against such corporation, requiring it to render the service denied or perform the act wrongfully omitted by it.    (p. 194).

Petition of A. A. Wingrove and others for a writ of mandamus against the Public Service Commission and others.

*Peremptory writ awarded.*

*W. R. Bennett,* for petitioners.

*A. A. Lilly,* Attorney General, *Frank Lively,* Assistant Attorney General, and *Dillon & Nuckolls,* for respondents.

POFFENBARGER, JUDGE:

A physician, a barber and the postmaster of the incorporated town of Scarbro in Fayette County, complain here by

petition of the refusal of the Public Service Commission to order the White Oak Fuel Company, a corporation, on their complaint, to furnish them electricity for lighting purposes upon the usual and customary terms upon which it supplies such commodity to other persons similarly situated. Deeming the company in question not to be a public service corporation, the Public Service Commission refused the relief asked and dismissed the complaint.

The company's charter authorizes it to mine, produce and sell coal and do such other things as are necessary and incidental to that business. It confers no right to generate or deal in electricity otherwise than as such business may be incidental to or involved in the mining, producing and selling of coal. In connection with its four or five shafts or plants, it maintains a large power plant for the generation of electricity for use in the operation of its motors and other machinery in its mines and for lighting its offices and stores and two or three hundred tenement houses on its premises, occupied by its employees.

About six or eight years ago, after the mines had been opened and before the town of Scarbro was incorporated, the company, at the request of a few citizens doing business in the immediate vicinity of its stores and offices, furnished them electric light for their business rooms and has since continued to do so. Since that time the number so supplied has increased so that now occupants of eighteen or twenty houses, not tenants of the company, are supplied and some 200 or 250 lights are carried for them. In fact, all who have applied for lights, except the complainants, have been permitted to connect their dwellings, stores and places of business with the company's transmission wires and receive light therefrom.

For these lights a uniform flat rate of 50 cents per month for each light is charged, while the tenants are required to pay 40 cents per month. From this source, the company has an income of at least $500.00 or $600.00 per month, but only about one-fourth of it comes from strangers. Its employees wire the buildings and install lights upon request and it keeps for sale all necessary light fixtures.

It has no franchise from the town nor any express permit to occupy the streets with its poles and wires, and does not

furnish light to it in its corporate capacity. Whether there has ever been a formal dedication or acceptance of any streets is not clearly shown, but one or two public roads run through the village and the poles and transmission wires run along one or both of them, but, it is claimed, on the company's property.

That the electrical power plant is operated primarily as a part of the mining enterprise and was not installed as a public service agency is clear and indisputable. Its chief function is to supply power for running the motors, pumps, fans and other mining machinery, and light to the stores and offices, maintained as part of the enterprise. Upon the facts and circumstances disclosed, it could no doubt be safely said the company would never have installed its plant for lighting service only and would not now operate it for that purpose alone.

Nevertheless its rendition of public service, incidental and for accomodation rather than profit, though it may be, is equally obvious. If for accommodation it is not gratitous. Compensation is charged and paid, a considerable income derived and the business is conducted in much the same manner as if the plant were maintained and run primarily for public service. Citizens not in any way connected with the company apply to it for the service, the wiring of their buildings and fixtures and all these demands have been complied with except in three instances.

Dr. Wingrove, Doliff, the barber, and Kessler, the postmaster, who are the complainants, all have their places of business in the same block. Until January 17th, 1914, Wingrove and Kessler had lights, but Doliff did not. Prior to that time, he had applied for them, but his request was not complied with. Without authority so to do, he connected his wires through those in Wingrove's office and the company cut off the entire block, but later restored its service to some of the buildings. These are the only known instances of refusal to furnish any person light, and, as to them, the company relies, for justification, on the misconduct of Wingrove and Doliff.

There is no denial of the ability of the company to furnish these parties light. It stands upon a claim of right to withhold its service from any person, on the ground that it is

not engaged in the public service and its charter does not authorize it to do public service business.

The lighting portion of the company's business falls within the letter of the statute conferring jurisdiction and power upon the Public Service Commission. Its jurisdiction includes "Gas Companies, electric lighting companies and municipalities furnishing gas or electricity for lighting, heating or power purposes." Chap. 150, Code of 1913, sec. 3. In the same section, public service corporations are defined, for the purposes of the act in the following terms: "The words 'public service corporation' used in this act shall include all persons, associations or persons, firms, corporations, municipalities and agencies engaged or employed in any business herein enumerated, or in any other public service business, whether above enumerated or not, whether incorporated or not."

This being true, no ground is perceived upon which it can be said to have been impliedly excepted from such jurisdiction. The service is voluntary, but such is the character of all other public service. No exception can stand on that ground. The company does other business and its public service is incidental, auxilliary, secondary or appendant. So is the lighting business of many others. For instance, a municipal corporation is created primarily for governmental purposes, but elects to furnish citizens water, electricity and gas, not a strictly governmental function at all, and purely voluntary. So a private water and light company may deal in coal and ice, and the coal and ice business may predominate in volume. Still the company would undoubtedly be engaged in the service of the general public.

Its lack of the power of eminent domain is a mere inconclusive circumstance. Many persons and firms engaged in the public service do not have it. If concerns engaged exclusively in water, light and gas service did not possess it, they would clearly be public service concerns nevertheless. Many common carriers are without power to exercise this high right. Acceptance of practically all applications for service, made by citizens of the town, is a sufficient election to engage in the business and manifestation thereof, without advertisement of the fact or solicitation of customers. Acquisition and

retention of its patronage by the company constitute an occupation of a certain field in the public service, into which no other concern or person can safely enter.   While it has not formally or in terms kept any one else out, others may be barred out by such occupancy.   Nor can it be material that the company reserves the right to discontinue the service at any time or has guarded against obligation on its part to continue it indefinitely or at all.   It is now devoting its property in part to a public function, and, in so doing, has subjected it to governmental regulation and control for the time being. "When private property is devoted to public use, it is subject to public regulation."   *Munn* v. *Illinois,* 94 U. S. 113; *Gas Co.* v. *Lowe and Butler,* 52 W. Va. 662, 671.   Its lack of charter authorization or contemplation cannot be set up as a defense.   It cannot plead its want of power while persisting in the alleged *ultra vires* act.   It does not seem to be relied upon, however, otherwise than as a circumstance tending to prove non-participation in public service.

It remains to determine the character of the order to be entered here.   On this subject, the statute is very indefinite, saying only that "the court shall decide the matter in controversy as may seem to be just and right."   Code, ch. 150, sec. 16.   Our jurisdiction is original, not appellate in the technical sense of the term.   *United Fuel Co. v. Public Service Commission,* 73 W. Va. 571, 80 S. E. 931.

At present we perceive remedies only by informal prohibition and mandamus, the former to prevent illegal affirmative action by the commission and the latter to compel performance of public duty in those instances in which the commission, under misapprehension as to the law, refuses to proceed to enforce it.   In the former case, the writ clearly goes to the commission and a suspension of its order suffices.   But, in instances of the kind now under consideration, a mere suspension of the order would not give relief, and the commission, acquiescing in the decision of the court and proceeding to enforce the law as declared by the court, might find it necessary to invoke the writ of mandamus from this or some other court.   This would involve two proceedings upon a single judicial hearing, causing both delay and expense, and fall short of the general statutory mandate to the court, having

the parties before it, "to decide the matter in controversy." The statute requires the court "to fix a time for the hearing on the application" and requires notice to be given to the commission so it "may be represented at such hearing." It does not expressly provide for notice to the opposite party in the proceeding before the commission, but it plainly contemplates his presence, and so impliedly requires it. What is necessarily implied in a statute is as much a part of it as if it were expressed in so many words. *State* v. *Harden,* 62 W. Va. 313. This court is expressly empowered to decide "the matter in controversy." Elementary and organic law, presumptively within the knowledge of the legislature, denies to all courts, acting under statutory authority or otherwise, power to decide against any person without notice and an opportunity to be heard. The matter in controversy here cannot be different from that before the commission, or merely between the aggrieved party and the commission. Both the winning and the losing party before the commission are directly interested in the order made by the commission. It cannot be suspended without affecting the rights of the winning party. Hence, if only the propriety of the order were the matter in controversy here, he would still be a necessary party. The contending parties being thus before the court and the entire controversy developed and decided, an ample basis is provided for the issuance of a peremptory writ of mandamus to the delinquent party, finally ending the entire controversy. As the statute does not prescribe the form, requisites or direction of this court's writ for the enforcement of its decision, the legislature necessarily left it in the power of the court to select the appropriate writ and award it against such person.

Under these principles and conclusions, the order of the Public Service Commission, complained of, will be suspended and a peremptory writ of mandamus awarded, commanding the White Oak Fuel Company forthwith to connect its lighting service wires with the wires in the houses of the petitioners, Wingrove and Doliff, in the proceedings mentioned, on their compliance with the conditions prescribed for other patrons similarly situated, and furnish them and each of them electricity from its electrical plant upon the terms and con-

ditions prescribed for other persons similarly situated. Since this proceeding was instituted, the service to Kessler has been restored and the controversy with him thus ended.

*Peremptory writ awarded.*