# CHARLESTON.

H. L. MOORE v. LEWISBURG & RONCEVERTE ELECTRIC RAILWAY
Co. *et als.*

Submitted September 5, 1917.   Decided September 18, 1917.

1. CORPORATIONS—*Rights of Stockholders—Management of Corporate Affairs.*

   The majority of the stockholders of a corporation, in the absence of fraud, have the uncontrollable right to manage the corporate affairs within the powers possessed by such corporation and a court of equity will not interefere at the suit of a minority to control such corporate action.   (p. 657).

2. SAME—*Suit by Minority Stockholder—Conditions Precedent.*

   Ordinarily a stockholder of a corporation cannot maintain a suit to secure redress for alleged mismanagement or misappropriation of the corporate funds by the managing officers or directors until he has appealed without avail to the directors, and in case of their refusal to act, to the stockholders, to correct the alleged wrongs.   (p. 657).

3. SAME.

   Where the corporate management is entirely under the control of the parties charged with fraud and mismanagement, and a majority of the stock is likewise controlled by them, a minority stockholder complaining of alleged fraudulent acts and mismanagement may apply to a court of equity for relief without first applying to the directors or stockholders, as such an application in such case would be presumably unavailing, and a court of equity would not permit the alleged guilty parties to conduct a suit against themselves to obtain such redress.   (p. 657).

4. SAME—*Suit by Minority Stockholder—Allegations.*

   A bill filed by a minority stockholder of a corporation seeking relief against the managing officers upon the ground of mismanagement and misappropriation must allege the particular things done by such managing officers constituting mismanagement and the particular acts of misappropriation. It is not sufficient to charge that such managing officers have been guilty of mismanagement and have misappropriated the corporate funds, but the facts justifying these conclusions must be stated. (p. 658).

5. SAME—*Public Service Corporation—Continuance of Service.*

   A public service corporation is under no obligation to continue the service rendered by it to the public longer than the public interests demand such service, and whenever the returns received

by the corporation for the service rendered by it are insufficient to pay the expenses of furnishing the service there has ceased to be a public demand therefor.  (p. 660).

6.  SAME—*Dissolution—Statute.*

   The stockholders of a public service corporation may dissolve such corporation and surrender its corporate franchises under the provisions of §56 of ch. 53 of the Code. (p. 660).

7.  SAME—*Dissolution—Right of Stockholder.*

   A stockholder of such public service corporation cannot question the acts of the stockholders in dissolving the corporation and surrendering its corporate franchises.  The propriety of such action can be brought in question, if at all, only by the proper state authorities.  (p. 660).

Appeal from Circuit Court, Greenbrier County.

Suit for injunction, appointment of a receiver, etc., by H. L. Moore against the Lewisburg and Ronceverte Electric Railway Company and others, with cross-bill by a part of the defendants.  Decree for plaintiff, and defendants appeal.

*Decree reversed, receiver discharged, injunction dissolved, and cause remanded.*

*Price, Smith, Spilman & Clay, E. C. Harrison, Wm. Gordon Mathews* and *J. S. McWhorter,* for appellees.

*Conley & Johnson* and *R. F. Dunlap,* for appellants.

RITZ, JUDGE:

This is an appeal from decrees of the circuit court of Greenbrier county enjoining the officers of the defendant company from making sale of its property and appointing a receiver to take charge of the same, and operate the defendant company's railway.  The plaintiff claims to be the owner of forty-seven shares of the capital stock of said company out of a total of five hundred shares thereof.  In the month of March, 1917, a general meeting of the stockholders of the defendant company was held after proper notice, and a resolution was unanimously adopted, all of the stock of said company being present and represented at said meeting, providing for the dissolution of the defendant corporation, and for the surrender of its franchises and the sale of its

assets, and appointing Henry Gilmer and R. B. Holt trustees for the purpose of administering said assets, the stockholders having determined to dismantle said railway line and sell the steel rails, copper wire and other materials. The fact that this resolution was adopted by the stockholders was published, as required by law, and thereafter the same was certified to the Secretary of State by the proper officers of the defendant corporation, and the operation of the defendant company's railway was discontinued and preparation made to dismantle the same and dispose of the property. At the time of the meeting in March at which the resolution of dissolution was passed the plaintiff was not interested in said company. The forty-seven shares of stock now claimed by him were at that time held by a creditor of the company as collateral to secure the payment of a note of one thousand dollars. This forty-seven shares of stock came into the hands of the company in satisfaction of a debt owing to it, and in accordance with a resolution of the board of directors of said company it was held by a trustee for the use and benefit of the company. The company, desiring to borrow some money to pay its operating expenses, pledged this stock to secure a loan of one thousand dollars. The note evidencing this loan of one thousand dollars was long past due and no effort had been made to collect the same until after the resolution of dissolution had been passed. The holder of the note then, without notice to the defendant company, or any of its officers, claims to have privately sold this stock to the plaintiff to satisfy his one thousand dollar note. The plaintiff Moore filed his bill alleging that he is a stockholder of the defendant company, alleging that the defendants W. S. Coursey and H. L. Van Sickler procured the control of said company for the purpose of destroying it; charging that the resolution of dissolution passed by the stockholders was *ultra vires,* and that said stockholders had no power to dissolve said corporation, or to discontinue the operation of said railroad; also alleging that the defendants Coursey and Van Sickler had been guilty of mismanagement and of misappropriation of the funds of the said railway, and that a sale had been made of the steel rails and the copper wire belonging to

the said railway, and that the same would be removed and said railway dismantled unless an injunction was granted against the same; alleging that the said H. L. Van Sickler and W. S. Coursey were the directors of said defendant company and had absolute control of a majority of the stock thereof; that they were insolvent, and that if they were allowed to make sale of said property and receive the proceeds therefor, they would misappropriate the same and deprive the stockholders and creditors thereof.

The Bank of Lewisburg and the Bank of Greenbrier were made defendants to this bill as the owners of a lien against the property of the defendant company secured by a deed of trust thereon. These defendants filed a cross bill reiterating the allegations of the plaintiff's bill, and asking also for the appointment of a receiver and an injunction as prayed for in the bill of plaintiff. The defendant company and the defendants Van Sickler and Coursey answered the plaintiff's bill and the cross bill of the defendant banks. Their answers show the history of this railroad. It is shown that from its beginning it was a losing venture; it had been constructed at a cost of more than one hundred and twenty thousand dollars, and four or five years thereafter it became so involved that it was sold under a decree of the Federal District Court for the sum of thirty-five thousand dollars. It was then reorganized on a basis of a capital of fifty thousand dollars; additional money was spent; but the receipts arising from the operation of said railroad have never been sufficient to pay the expenses of operating and maintaining the same. The defendants show that by dismantling said railroad and selling the material in the same they will be enabled to pay all the debts of the defendant company and have a substantial surplus for distribution among the stockholders because of the extraordinary prices which they would now be able to obtain for these railroad materials. They deny all the allegations of fraud and embezzlement of the funds of the company and they set up the dissolution of said company by its stockholders, and assert the same to be authorized by the law of the land. They also aver the appointment of Henry Gilmer and R. B. Holt as trustees to administer

the assets of the company for the creditors and stockholders, and deny that there is any likelihood that these trustee will dissipate or misappropriate the fund arising from the sale of the assets of said company.

A large number of affidavits are filed, from which it conclusively appears that no one has ever been able to operate this railroad advantageously. During the ten years of its operation it has continuously lost money for its stockholders, and it is shown that it is now in a very unsatisfactory physical condition, notwithstanding no dividends have ever been paid out of its earnings to the holders of stock.

The plaintiff contends that the circuit court of Greenbrier county had jurisdiction to appoint the receiver herein, and to enjoin the sale of the property of said company upon two grounds: First, because the defendants H. L. Van Sickler and W. S. Coursey were grossly mismanaging the affairs of said company, and were misappropriating its assets; and Second, because the defendant company, being a public service corporation, could not dissolve and surrender its franchises, but that the same must be sold as a going railroad company, including in such sale not only the physical property but the franchises thereof; and that the attempt to dissolve the same, dismantle and sell the physical properties in this way, was an *ultra vires* act upon the part of said stockholders which could be enjoined by any stockholder. The defendant banks in their cross bill make the same contentions, and they further insist that having a first lien upon said property, and the debts evidencing said lien being due, they are entitled to have the aid of a court of equity to enforce said lien. The allegations in the bill as to the fraudulent conduct upon the part of the defendants Coursey and Van Sickler are in the main general in their character.

A minority stockholder of a corporation, in order to take the possession and control of its assets from the duly authorized board of directors and officers, must show specific acts of mismanagement or misappropriation of the company's assets, and must support the same by proof thereof. He must ordinarily further show that he has applied to the board of directors and, failing to get relief therefrom, to the stock-

holders for redress against such officers or directors as may be guilty of the acts of misappropriation and mismanagement of which he complains. *Ward* v. *Hotel Randolph Co.*, 65 W. Va. 721; *Smiley* v. *New River Co.*, 72 W. Va. 221; *Davidson* v. *Davidson*, 70 W. Va. 203.

Where, however, the parties charged to be guilty of the acts of mismanagement and misappropriation are the board of directors, and they have the absolute control of the stock of said company, and it appears that it would be useless to apply to them to rectify their own wrongful acts, it is not necessary to make such application, but said stockholder may at once apply to a court of equity for relief. It is a generally recognized rule that the right of action to vindicate corporate rights, or threatened injury of property of the corporation, is vested in the corporate authorities and must be prosecuted in the name of the corporation. However, this rule can hardly be said to have application when the directors of the company themselves are the parties guilty of the misappropriations and fraudulent use of the company's property, or the *ultra vires* acts complained of, and where they have the absolute control of the stock of said corporation, as is shown to be the case here. *Crumlish's Adm'r* v. *Railroad Co.*, 28 W. Va. 623; *Virginia Passenger & Power Co.* v. *Fisher*, 104 Va. 121; *Cook on Corporations*, §741.

In this case it sufficiently appears that the defendants H. L. Van Sickler and W. S. Coursey, who are charged with the misappropriation of the company's funds, and with the mismanagement of its affairs, with the deliberate purpose of wrecking the same, are in the absolute control of the board of directors of said company, and of the stockholders thereof, so that any application to the directors or to the stockholders for relief would be but an application to the said Van Sockler and the said Coursey, and would be entirely useless.

Are the allegations of the plaintiff's bill in this case sufficient to justify the appointment of a receiver and the taking of this property away from the directors of the company? As before stated, these allegations are in general terms that the defendants Van Sickler and Coursey are acting with the deliberate purpose of wrecking and destroying the com-

pany; that they have mismanaged the affairs of said company in order to make its operation unprofitable; that they have embezzled and misappropriated some of the assets of said company; and one particular act of embezzlement is pointed out and charged on information and belief. The allegations, with this exception, are general in their nature; are but conclusions; and are not sufficient to justify the interference of a court of equity. To deprive the properly elected officers of a corporation of the management and control of its property upon the ground of mismanagement or misappropriation, the allegations of such mismanagement, fraudulent conduct and embezzlement must be positive declarations of fact. It must appear just what has been done by the officers which amounts to mismanagement, embezzlement or misappropriation. The mere conclusion drawn from facts which are not set up is not sufficient. The defendants in this case deny emphatically all of the general allegations of fraud charged against them, and the particular act of embezzlement which is charged against them is fully met and overcome by the answers. The charges of embezzlement made in the bill and in the cross bill in general terms are not at all sustained by the proof. On the contrary, it is shown by the affidavits, not only of the interested parties, but of people who operated this railroad in the past, that it was always operated at a loss; and it appears from these affidavits that the operation has been no more disastrous to the stockholders during the time that Van Sickler and Coursey operated it than it was when operated by other people. The general allegations made in this case of fraud, mismanagement and misappropriation of the company's assets, unsupported by any evidence and denied by the answers, and by the affidavits of the people who have opportunity to know the facts in regard thereto, are entirely insufficient to justify the taking of this company's property from the possession of its duly elected officers.

It is contended, however, that independent of any charges of fraud or embezzlement, the plaintiff is entitled to the relief granted on the sole ground that the acts of the stockholders in dissolving said corporation and surrendering its

franchises are *ultra vires* and void; that the defendant com-
pany, being a public service corporation, cannot dissolve
and cannot surrender its franchises, but that it must be sold
as an operating railroad, its physical properties and fran-
chises together, and that the plaintiff, being a stockholder of
said company, is entitled to enjoin the carrying into effect
of this resolution of dissolution. It cannot be doubted that
the public are to some extent interested in the operation of
a railroad, and to the extent of this interest such corporation
differs from the ordinary private corporation, but only to
this extent. So long as such corporation is engaged in such
business it is subject to the control of the public authorities;
it must submit to some extent to have its business supervised
and regulated by public authority; and so long as it contin-
ues to possess the franchises granted to it by the state it must
exercise those powers and franchises, and do so in the man-
ner and under the regulations provided by competent author-
ity. *Railroad Co.* v. *Transportation Co.*, 25 W. Va. 324;
*Town of Gassaway* v. *Gassaway Gas Co.*, 75 W. Va. 60.

This does not mean, however, that such a corporation must
continue to carry on the business for which it was incorpor-
ated and to exercise the franchises granted to it by the state
regardless of the consequences to itself. To say that a rail-
road corporation must continue its operations indefinitely,
regardless of the consequences to the stockholders, would in
effect, in a case like this, permit the entire exhaustion of the
property by its use. It would be a taking of the private
property of the company for public use without compensa-
tion. There is no special provision in our statute for the dis-
solution of public service corporations. The provisions of
law for the dissolution of private corporations generally
must therefore apply, if it is held that such corporations can
dissolve at all. We are constrained to hold that when it
appears to the stockholders of a public service corporation
that its business cannot be operated except at a loss, and that
a fair test has been made in order to determine this fact, they
have authority to discontinue the business of such a corpora-
tion and surrender its franchises. This seems to be sup-
ported by the authorities. *Railroad Co.* v. *Transportation*

*Co.,* 25 W. Va. 324; Wyman on Public Service Corp., §296; *Fellows* v. *City of Los Angeles,* 151 Cal. 52; *Sherwood* v. *Atlantic &c., R. R. Co.,* 94 Va. 291; *Commonwealth* v. *Railway Co.,* 12 Gray, 180; *Jack* v. *Williams,* 113 Fed. 823; *State* v. *Railway Co.,* 53 Kan. 329, 23 L. R. A. 564.

Certainly a public service corporation is under no obligation to continue the service rendered by it to the public longer than the public interest demands such service, and it may be said that whenever the returns received by the corporation for the service rendered by it are insufficient to pay the expenses of furnishing the service there has ceased to be a public demand for the service. It may be that the stockholders of such a corporation determine this question at their peril, but can a stockholder question their decision in this regard? He stands in no different relation to the corporation than a stockholder in any ordinary private corporation. He cannot question the validity of the acts of the stockholders unless he shows that a pecuniary loss will result to him therefrom. There is no such showing in this case, but on the other hand it appears that his stock will be worth more if the company is allowed to dissolve, as contemplated by the resolution of the stockholders, than it would be if it is compelled to continue operations as a public service corporation. The franchises exercised by this company were granted to it by the state. If it has violated any of the provisions of these franchises in attempting to dissolve and discontinue business, the state alone can raise that question, if indeed it can be raised at all. In *Lumber Co.* v. *Ward,* 30 W. Va. 43, it is held that a cause of forfeiture cannot be taken advantage of or enforced against a private corporation, except in a proper proceeding brought by the state for that purpose, and this goes upon the theory that the contract is between the state and the corporation, and that for a failure of the corporation to perform its part of the contract no one is in position to take advantage except the state. *Moore* v. *Schoppert,* 22 W. Va. 282.

Some of the authorities seem to recognize the right of the state in a proper proceeding to review the action of the stockholders of a public service corporation in determining to dis-

continue business and surrender its franchises. *Fellows* v. *City of Los Angeles,* 151 Cal. 52; *State ex rel. Attorney General* v. *Railroad Co.,* 53 Kan. 329; *Jack* v. *Williams,* 113 Fed. 823 and 145 Fed. 281; *State of Iowa* v. *Old Colony Trust Co.,* 215 Fed. 307; *New York Trust Co.* v. *Railway Co.,* 192 Fed. 728.

We are not called upon, however, to decide in this case whether the state can by writ of mandamus seek to compel the said railway company to continue its operations as a public service corporation, or have a judicial review of the question of whether such railroad can be operated advantageously to the stockholders.

It is contended by the defendants, Bank of Greenbrier and Bank of Lewisburg, that they have a right to have a receiver appointed for the purpose of having satisfaction of their liens out of the funds of the railroad company. It appears that these liens are secured by a deed of trust. The ground upon which it is asked that equity take jurisdiction at the instance of these banks, in addition to the grounds which we have already disposed of, is that the defendant company is making sale of its property, and that there is danger that the assets will be so misapplied by the defendants Van Sickler and Coursey that the debts of the defendants would not be satisfied. It appears from the record in this case that the stockholders and directors of this company have done the very thing which these banks desire to have done, that is, they have divested themselves of the right to administer the property and turned it over to trustees. It is in no way suggested in any of the pleadings in this case that these trustees are not entirely solvent or will not properly administer the trust imposed upon them, or that there is likely to be any loss because of their misconduct or misfeasance. In the absence of such a showing a court of equity will not undo the act of the stockholders of the corporation, but will allow the trustees appointed by the stockholders to carry out the trust for the benefit of the creditors and stockholders of the company. It appears from the record that part of the property of the company has already been sold for an amount largely in excess of the debts of the complaining banks, and

their debts would no doubt have been paid off before this time had it not been for their activity in restraining the company from carrying out the arrangements made by it.

The decrees of the circuit court of Greenbrier county complained of will be reversed, the injunction awarded in this case dissolved, the receiver discharged, and the cause remanded for further proceeding.

*Decree reversed, receiver discharged, injunction dissolved, and cause remanded.*