# CHARLESTON.

WILLIAM COLLINS *et al. v.* PUBLIC SERVICE COMMISSION.

Submitted Sept. 5, 1923.    Decided Sept. 25, 1923.

RAILROADS—*Supreme Court of Appeals Will not Enjoin Public Service Commission From Discontinuing Passenger Service, Where Continuance Would Cause Great Loss to Operating Company, and Motor Facilities Sufficient.*

This court will not suspend the action of the Public Service Commission, whereby it discontinues certain passenger trains, operated by a railroad company on two branch lines, where the facts found by the Commission and borne out by the evidence shows that the continuance of said trains will be of great pecuniary loss to the operating company, and that there are ample facilities for taking care of the passenger trains, between the points reached by said trains, by means of the trains retained and by motor bus lines and taxi cabs, over a hard surfaced road with no loss of time to the traveling public and with negligible additional expense.

Proceeding by William Collins and others against Public Service Commission and others to suspend an order of the named defendant discontinuing certain passenger train service.

*Order of suspension refused.*

*R. D. Heironimus,* for petitioners.
*E. A. Bowers and A. Bliss McCrum,* for respondents.

McGINNIS, JUDGE:

This is a petition to this court to suspend the final order entered in the above styled case, by the Public Service Commission, on the 25th day of June, 1923, whereby certain trains in the passenger service between the town of Thomas, the junction point on the main line of the Western Maryland Railroad, and Davis, on a branch line to that point, were discontinued.

Application was filed before the Public Service Commission on January 27, 1922, by the Western Maryland Railroad Company, for permission to discontinue all passenger service between Thomas, the junction point on the main line of said railroad, and Pierce and Davis, Pierce being situated 2.9 miles from Thomas on one side of said main line and Davis being situated 6 miles from Thomas on the other side of said main line. The schedule of the Railroad Company at that time shows that passenger trains made four round trips each day running between Thomas and Davis, and two round trips each day between Thomas and Pierce. The evidence shows that the operation of these six round trips daily required two full crews, which consisted of two engineers, two firemen, two conductors, two trainmen and three men at the station at Davis. The basis of the Railroad Company's application is that the trains in question were operated at an annual loss of thousands of dollars to the Railroad Company and lack of public necessity, due to the fact that concrete roads had been built between Davis and Thomas, also Thomas and Pierce, and bus and taxi lines were now in operation between these points, which are being patronized by the public to the prejudice of the railroad company.

Proper notice was given by the Commission as required

by law, and a hearing was held at the offices of the said Commission in Charleston, West Virginia, on March 15, 1922. The Railroad Company appeared and presented its evidence, but there was no appearance by any one protesting against the proposed discontinuance of said service.

Later, June 15, 1923, after giving notice, the Commission, represented by Commissioner E. D. Lewis, held another hearing at Thomas. At this meeting the petitioner introduced further evidence and the attorney for the protestants filed a statement and withdrew from the case. At this meeting, the petitioners offered a compromise schedule which would insure a schedule calling for four trains (two each way) operating between said cities per day. Willingness to accept this compromise schedule was expressed by the mayor of the town of Davis and the Vice President of the Davis Coal Company, a corporation which operated the mines in the town of Pierce.

On June 25, 1923, the Commission, at a meeting held at Charleston, West Virginia, accepted the compromise offer and ordered that the Railroad Company discontinue trains No. 25, 26, 27 and 28, and that it should continue to operate trains No. 21, 22, 23 and 24 on a schedule outlined in the order.

From this order the protestants have appealed to this court, protesting that the Commission, in the first place had no jurisdiction to issue such an order; and, in the second place, that the ruling was unjust to the citizens of the town of Davis.

In support of this contention, petitions purporting to contain the names of 90% of the inhabitants of the town of Davis are presented, along with letters from prominent people of the town. Protests were also registered by the board of trade of Davis. An unsworn statement was filed by counsel for the people of Davis and made a part of the record, by the Commission, which briefly related the history of the Railroad, dating back twenty years when it was organized by certain parties to reach the vast timber lands situated around Davis; that the town was laid off in lots and these were sold by these same promoters, some of them to the very people who now live there; that the town had grown to a population of over three thousand people; that it thrived during the time the timber in that community lasted; that a pulp mill

was operated there until certain labor disturbances of 1919, at which time a strike caused them to close down and the plant was removed.

The Railroad, on the other hand, produced evidence of losses on their part in the operation of these trains for the years 1920, 1921 and 1922. In 1920 the passenger service loss totaled $32,640.24; in 1921 the passenger service loss totaled $29,319.30; in 1922 the passenger service loss totaled $26,807.51; this evidence was not contradicted. The evidence discloses that there are hard surfaced roads between Thomas and Davis and between Thomas and Pierce; that the distance, by road, from Thomas to Davis is about 2½ miles, and the distance, by rail, is 6 miles; that the distance, by road from Thomas to Pierce is three miles and, by rail, 2.9 miles; that taxies and busses meet the trains at Thomas regularly and that a great many passengers get off at Thomas and go by taxi or bus line to either of the two places.

The protestants claim that the Commission has no jurisdiction to authorize the discontinuance of any of the trains mentioned in the original schedule of the Railroad Company. We think the statute, Sec. 4, Ch. 15, Barnes Code, clearly gives the Commission that jurisdiction. Quoting that portion of the statute which refers to the jurisdiction of the Public Service Commission:

> "No steam Railroad or other public service corporation shall discontinue any regular passenger train schedule, or time table, without first obtaining authority from the commission so to do. Unless the same be done under uniform rules and regulations fixed by such railroad or public service corporation with the Public Service Commission and approved by said Commission."

This section, by necessary implication, gives the Public Service Commission jurisdiction to discontinue regular passenger trains. A railroad company, under this section, is not authorized to discontinue regular passenger trains on its railroad without first obtaining authority from the Commission. Can it be said that a railroad company is, under this section, required to obtain from the Public Service Commission an authority that it did not have? We think not. Against

the compromise schedule of trains as ordered by the Commission, there seems to have been no objection made before the Commission, at the time it had this application under consideration.

The Commission ascertained, from the evidence in the case, that: "The revenue derived from the operation of said passenger trains is not sufficient to pay operating expenses and taxes; that for the year 1922, the operating expenses and taxes exceeded the revenue by $26,807.51; that there is no immediate prospect of the revenue from said passenger trains increasing in any substantial amount; that there is a good hard surfaced road between Davis and Thomas, on which motor vehicles ply between said points for the purpose of handling traffic; that there is a good hard road between Thomas and Pierce, a distance of about two and one half miles, over which motor vehicles operate for the purpose of handling the traffic between said towns; and that applicant has submitted an offer of compromise whereby applicants will continue to operate a part of said trains." These are the facts found by the Commission.

> "Findings of fact by the Public Service Commission, based on evidence to support them, generally will not be reviewed by this court."

*City of Huntington* v. *Public Service Commission*, 89 W. Va., 703; *Mill Creek Coal and Coke Co.*, v. *Public Service Commission*, 84 W. Va., 662; *Railway Company* v. *Public Service Commission*, 82 W. Va. 408.

"And upon consideration of these facts, the Commission concludes that it would be unreasonable and unjust to require the applicant, Western Maryland Railway Company, to operate said trains and that the offer of compromise submitted by applicant, and of record is fair and reasonable under all the circumstances, and should be put in effect."

In the opinion of this court these findings of fact by the Commission are fully justified by the evidence, and we find no reason for disturbing the order of the Public Service Commission made in this case.

*Order of Suspension refused.*