Preston County Light And Power Company,
*a corporation.*

*v.*

Myron R. Renick, *et al. members,*
Public Service Commission of West Virginia, and
Preston County Coke Company, *a corporation*

(No. 12002)

Submitted January 20, 1960.    Decided March 8, 1960.

*Blagg, Stone, Mauzy, Anderson & Bowles, A. G. Stone, Charles E. Anderson, Daniel Gersen,* for relator.

*Steptoe & Johnson, Eugene G. Eason, Steptoe & Johnson, W. F. Wunschel,* for respondents.

HAYMOND, JUDGE:

In this original proceeding in prohibition instituted in this Court on November 24, 1959, the petitioner, Preston County Light and Power Company, a corporation, herein referred to as "power company," seeks a writ to prohibit the defendants, Myron R. Renick, Hillis Townsend and Thaddeus D. Kauffelt, members of the Public Service Commission of West Virginia and that commission, and Preston County Coke Company, a corporation, herein referred to as "coke company," from proceeding further or asserting jurisdiction in a certain proceeding instituted by Preston County Coke Company, entitled Case No. 4913, now pending before the commission in which the applicant seeks authority to establish rates and charges for the sale of electricity. The proceeding before the commis-

sion is based upon a petition in which the coke company alleges that the rates for electricity stipulated in an agreement between it as the seller and the power company as the buyer are inadequate and the purpose of that proceeding is the establishment by the commission of rates and charges set forth in the petition in lieu of rates and charges specified in the agreement between the coke company and the power company. By order entered by the commission on October 30, 1959 in the case now pending before it, the commission found that the coke company is a utility under the jurisdiction of the commission and directed that a hearing be held on December 10, 1959, for the purpose of affording the parties an opportunity to present evidence as to the reasonableness of the rates and charges which the coke company seeks permission to establish.

Upon the rule awarded by this Court returnable January 13, 1960, the defendants, Myron R. Renick, Hillis Townsend and Thaddeus D. Kauffelt, members, and the Public Service Commission of West Virginia, filed their demurrer and answer to the petition, the defendant, Preston County Coke Company, filed its demurrer and answer to the petition, and the petitioner filed its reply to the answer of Preston County Coke Company and its seperate demurrers to the foregoing answers of the defendants. On January 20, 1960, this proceeding was submitted for decision upon the foregoing demurrers and pleadings and the written briefs and oral arguments in behalf of the respective parties.

The defendant coke company was incorporated in 1907 and in 1911 it began to sell electricity to the public generally in certain sections of Preston County and continued to do so until and during the year 1923. In November of that year the power company was incorporated and organized and the coke company transferred its facilities for the transmission and distribution of electric power in Preston County to the power company. Since the transfer the coke company has continued to generate electricity and to sell it to the power company for distribution to the public generally

in Preston County by the power company and the power company as a public utility has furnished the electricity purchased by it from the coke company to the public generally in Preston County and is now engaged in that service.

For several years after its incorporation the power company was a subsidiary of the coke company. Later control of the power company was acquired by Preston County Supply Company, control of the coke company was obtained by the widow of Colonel H. C. Greer and control of Preston County Supply Company and the power company was acquired and is now exercised by her daughter and the sons of her daughter. For sometime prior to the institution of this proceeding there has been no affiliation between the coke company and the power company and neither is an affiliate of the other. Since 1958, an undetermined legal controversy has existed between the two companies involving an alleged indebtedness by the power company to the coke company for electricity sold by the coke company to the power company.

The electric power generated by the coke company was sold by it to the power company under a verbal arrangement or agreement until December 1955 and on December 19, 1955, a written contract was entered into between the coke company and the power company which was amended by a subsequent written agreement of May 14, 1956, which specified the rates for the electricity furnished to the power company by the coke company.

The petition of the power company alleges that the coke company now furnishes electricity to no one except the power company and the answer of the coke company alleges that all the electricity furnished by the power company to its customers is supplied by the generating plant and other facilities of the coke company and that the only purchaser of electricity from the coke company, other than the power company, is a company controlled by the widow of H. C. Greer which

now operates the coal and coke producing properties formerly owned by the coke company.

In 1923 the coke company filed its application with the public service commission for permission to increase its rates and in that proceeding, entitled Case No. 1487, by order entered January 23, 1924, the requested rates were authorized and the order provided that "The applicant, within a reasonable time, segregate its public utility electrical business from its coal and coke business and keep its books with respect to its utility business in accordance with the rules of the commission pertaining to such a utility." The answer of the coke company also alleges that the power company instituted a proceeding against the Monongahela Power Company before the commission to prevent encroachment by that company upon the territory of the applicant in supplying service to Glauber Brass Company and that the foregoing proceeding was pending before the commission in December 1955 when the first written contract for the sale of electricity by the coke company to the power company was entered into on December 19, 1955.

After the entry of the order of January 23, 1924, which required the coke company to keep its books with respect to its electrical utility business in accordance with the rules of the commission, it does not appear that the commission has actually exercised any regulatory authority over the electrical business of the coke company or that the coke company has recognized or invoked the jurisdiction of the commission in connection with the generation and sale of electricity to the power company, but it does appear that the verbal and written agreements entered into by the coke company and the power company since January 23, 1924 for the sale of electricity produced by the coke company to the power company and the transfer by the coke company of its transmission and distribution facilities to the power company have not been approved by the commission.

Though it is conceded that the power company purchases and receives from the coke company all the electricity which the power company as a public utility furnishes to its consumers in Preston County and that the coke company sells and furnishes to the power company, and has continued to do so since the year 1924, all the electricity produced by the coke company, except the electricity used by the coke company in the operation of its coal and coke producing properties and the electricity which it has sold to its successor for use in the operation of the coal and coke producing properties formerly owned and operated by the coke company, and though it appears that the coke company in furnishing electricity to the power company has owned, used and operated the same generating unit or plant, with such additions or replacements as may have been necessary, that it owned, used and operated in furnishing electricity to the public generally in Preston County as a public utility until it transferred its transmission and distribution facilities to the power company in 1924, the power company contends that the coke company is not a public utility and has not operated as a public utility or represented that it occupied the status of a public utility since it transferred its transmission and distribution facilities to the power company in 1924.

It is also conceded that prior to 1924 the coke company devoted its electrical generating facilities as well as its transmission and distribution facilities to the service of the public generally in Preston County in furnishing electricity to its customers; and it does not appear from the record in this proceeding that the coke company ever applied for or obtained permission from the public service commission to terminate its status as a public utility, or to discontinue its business of generating and selling electricity to the power company for distribution by it to the public generally in Preston County, or at any time to dispose of its electrical generating plant to any purchaser which does not occupy the status of a public utility, or to surrender

any right or privilege which it possessed and exercised as a public utility prior to the transfer of its transmission and distribution facilities to the power company in 1924. It does, however, appear that the charter of the coke company did not authorize it to exercise the rights and privileges of a public utility until it was amended in April 1959 after the coke company instituted on March 9, 1959 the proceeding now pending before the commission.

The material facts, as disclosed by the pleadings in this proceeding, are not disputed and the questions presented are questions of law. Those questions are: (1) Whether the defendant Preston County Coke Company, in the operation of its business of generating and selling electricity to Preston County Light and Power Company for distribution by it to the public generally, is a public utility and, as such, is subject to the jurisdiction of the public service commission; and (2) whether, if that defendant is a public utility, the public service commission has jurisdiction of a proceeding to determine and prescribe rates for the sale of such electricity other than the rates fixed by the present contract between the coke company and the power company, and to supervise and modify any such contract between those companies.

The petitioner contends in substance that the defendant coke company is not a public utility subject to the jurisdiction of the public service commission; that since the transfer of its transmission and distribution facilities for the delivery of electricity to the power company in 1924, the coke company, during a period of approximately thirty five years, has not represented itself to be a public utility or held itself out to the general public as ready, willing and able to serve all persons in its service area who request its service at a uniform rate; that the coke company has not subjected itself to regulation by the commission or been a party to any proceeding before the commission or in any way acted as or assumed the duties or obligations of a public utility; that even if both parties

to the present contract between the coke company and the power company are public utilities, the commission is without authority to modify the contract or to relieve either party from its obligations under the contract; that by asserting jurisdiction to fix the rates to be charged by the coke company for the sale of its electricity to the power company, despite the existing contract between them, the public service commission has violated Article III, Sections 4, 9 and 10, of the Constitution of this State and Article I, Section 10 of and the Fourteenth Amendment to the Constitution of the United States; and that the coke company is estopped from repudiating the present contract by asserting its status as a public utility.

It is not disputed, and the admitted facts disclosed by the pleadings clearly show, that the coke company devoted its property and facilities for the generation, transmission and distribution of electricity to the general public in various sections of Preston County from sometime in the year 1911 until it transferred its transmission and distribution facilities to the power company in 1924 and during that period of approximately thirteen years the coke company in the generation, transmission and distribution of electricity to the public generally operated those facilities for that purpose as a public utility and by serving the public in that manner acquired the status of a public utility. When it transferred its transmission and distribution facilities to the power company it did not apply for or receive, and since then it has not applied for or received, permission from the public service commission to terminate its status as a public utility and it has not by any official act or course of conduct withdrawn its facilities for the generation of electricity from the public service or surrendered any of its rights and privileges as a public utility. On the contrary it has continued to generate electricity in the same manner and with the same facilities with any necessary replacements or additions and sold such electricity to the power company for distribution by it to the con-

sumers of electricity in the same general territory formerly served by the coke company and it has generated and sold such electricity to the power company with knowledge that it was distributed and furnished to the public generally by the power company. The only difference in the service to the public furnished by the coke company in the generation and sale of its electricity consisted in the supply of electricity to the public indirectly by the power company instead of to the public directly by the coke company. In the presently existing circumstances the power company is entirely dependent upon the coke company for the electricity which it furnishes to the public in the same service area and the public is likewise dependent upon the coke company for the production of electricity which it receives directly from the power company. During the entire period of its existence the coke company has done nothing to divest itself of its original status as a public utility in the generation and sale of electricity for use by the general public.

It is well established that the devotion of property to a public use carries with it the duty to serve the public and that such duty must be performed by a public utility or its privileges and franchises must be surrendered; and that a public utility has no right to discontinue or abandon its service or any of its property devoted to public use or to impair its ability to perform its public duties except with the consent of the State or its duly authorized agency which in this instance is the public service commission. 73 C.J.S., Public Utilities, Section 8a.

That the coke company has not divested itself of its original status as a public utility in the operation of its business of generating and selling electricity for distribution to the public is clearly indicated by the provision in the order of the public service commission in the proceeding instituted by the coke company in 1923, entitled Case No. 1487, entered January 23, 1924, which required the applicant, the coke company, to segregate its public utility electrical business from its

coal and coke business and to keep its books with respect to its public utility electrical business in accordance with the rules of the commission pertaining to that type of utility. That provision shows that the commission intended to retain and continue to exercise its jurisdiction with respect to the generation and sale of electricity by the coke company and that the coke company recognized its continuing status as a public utility as to its business of generating and selling electricity for distribution to the public by the power company. But however that may be, the mere failure of the coke company to comply with the foregoing requirement or to invoke the jurisdiction or the regulatory power of the commission for a long period of time, or the mere failure of the commission affirmatively to assert in any manner its jurisdiction with respect to the public service rendered by the coke company did not, and could not, divest the coke company of its original status as a public utility. Under the admitted facts of this case that status still continues and has not been erased or terminated by any inaction of the coke company or the commission in connection with the supervision or the regulation by the commission of the service rendered to the public by the coke company.

Though a public utility may apply for permission to abandon or discontinue its public service, in whole or in part, 73 C.J.S., Public Utilities, Section 8a, and is not bound to continue its service longer than the interest of the public demands such service, or when the rate for its service will not pay its cost, *Moore v. Lewisburg and Ronceverte Electric Railway Company*, 80 W. Va. 653, 93 S. E. 762, L.R.A. 1918A, 1028, as long as a public utility maintains its franchise it must fulfill its obligation to the public directly or impliedly arising from such franchise. *City of Philippi v. Tygarts Valley Water Company*, 99 W. Va. 473, 129 S. E. 465; *The Town of Gassaway v. The Gassaway Gas Company*, 75 W. Va. 60, 83 S. E. 189. The well established general rule is that when a public utility has undertaken the rendition of public service it can

not discontinue such service at will but is under a duty to continue its service to the public. 43 Am. Jur., Public Utilities and Services, Section 78.

Section 1, Article 3, Chapter 24, Code, 1931, provides in part that "No railroad or other public utility shall discontinue any regular passenger train, or other public service facility, * * * , without first obtaining authority from the commission so to do, unless the same be done under uniform rules and regulations filed by such railroad or public utility with the public service commission and approved by said commission." See also *Collins v. Public Service Commission,* 94 W. Va. 455, 119 S. E. 288; *Norfolk and Western Railway Company v. Public Service Commission,* 91 W. Va. 414, 113 S. E. 247, affirmed 265 U. S. 70, 44 S. Ct. 439, 68 L. Ed. 904.

In the *Collins* case this Court said that, under a similar provision of the statute before its amendment by the Code of 1931, a railroad company was not authorized to discontinue regular passenger trains without first obtaining authority from the public service commission so to do. In the *Norfolk and Western Railway Company* case this Court, considering the effect of similar statutory provisions, held in point 1 of the syllabus that the public service commission has the power to require a railway company to conform its conduct and policies to the laws of this State and to all lawful rules, regulations and orders of the commission, and to prevent the discontinuance of any regular or other public service facility without the previously obtained authority of the commission to discontinue such facility.

Under the quoted provisions of the statute and the decisions of this Court in the two above cited cases, the coke company, if it is a public utility, could not discontinue its generation and sale to the power company of the electricity which that company distributes and furnishes to the public or, by discontinuing such generation and sale, divest itself of its status of a

public utility, unless the coke company obtains authority from the commission so to do. This the coke company has not done or attempted to do at any time.

The term "public utility" properly designates the owner or person in control of property devoted to the public use, rather than the physical property or equipment; but it may also characterize the business being carried on and it is sometimes used to mean the physical property and plant being used in the service of the public. 73 C.J.S., Public Utilities, Section 3. It implies a public use, carrying with it the duty to serve the public and to treat all persons alike, and it precludes the idea of service which is private in its nature and is not to be obtained by the public. 73 C.J.S., Public Utilities, Section 1. Whether the operator of a given business or enterprise is a public utility depends on whether or not the service rendered by it is of a public character and of public consequence and concern; and the conduct of other business of a private nature in addition to the rendition of a public service by a person in control of property does not divest him of his status as a public utility or exempt him from regulation as such as to his public business. 73 C.J.S., Public Utilities, Sections 2 and 9. See *Wingrove v. Public Service Commission,* 74 W. Va. 190, 81 S. E. 734, L.R.A. 1918A, 210.

In *Clarksburg Light and Heat Company v. Public Service Commission of West Virginia,* 84 W. Va. 638, 100 S. E. 551, this Court held in point 3 of the syllabus that "The use which the consumer makes of the commodity furnished does not constitute the test as to whether or not the regulatory powers of the Commission in dealing with public utilities may be invoked. It is the duty which the purveyor or producer has undertaken to perform on behalf of and so owes to the public generally, or to any defined portion of it, as the purveyor of the commodity, or as an agency in the performance of the service which stamps the purveyor or the agency as being a public service utility.", and in point 5 of the syllabus that "Whenever any business

or enterprise becomes so closely and intimately related to the public, or to any substantial part of a community, as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business, it becomes the subject for the exercise of the regulatory power of the state." In the same case this Court also held in point 4 of the syllabus that "Where the legislature has declared a certain business subject to regulation by the Public Service Commission, such declaration will not be disregarded by this Court, unless it appears that there is no substantial basis for holding that the business is of that character which is subject to regulation by the Public Service Commission."

Section 1, Article 1, Chapter 24, Code, 1931, declares that "Except where a different meaning clearly appears from the context, the words 'public utility' when used in this chapter shall mean and include any person or persons, or association of persons, however associated, whether incorporated or not, including municipalities, engaged in any business, whether herein enumerated or not, which is, or shall hereafter be held to be, a public service."; and Section 1, Article 2, Chapter 24, Code, 1931, as amended, expressly provides that "The jurisdiction of the commission shall extend to all public utilities in this State, and shall include any utility engaged in any of the following public services: * * * generation and transmission of electrical energy by hydroelectric or other utilities for service to the public, whether directly or through a distributing utility; * * * ."

Under the undisputed facts as disclosed by the pleadings in this proceeding, the foregoing statutory provisions apply to the coke company and establish its status as a public utility to the extent that it engages in the business of generating and selling electricity for distribution by the power company in the area in which it furnishes a public service to its consumers. *Wingrove v. Public Service Commission*, 74 W. Va. 190, 81 S. E. 734, L.R.A. 1918A, 210. As previously in-

dicated the coke company generates and supplies to the power company all the electricity which it distributes to the general public; the power company in the presently existing circumstances, as disclosed by the pleadings in this proceeding, is entirely dependent upon the coke company for the electricity which it distributes to its customers; and the public is likewise dependent upon the generation and sale by the coke company of such electricity to the power company for the public service rendered to the public by both companies.

It is obvious that the coke company could not refuse to generate and sell its electricity to the power company so long as it continues to operate its business of generating and selling electricity without the permission of the public service commission and that if the coke company should cease the generation and the sale of its electricity to the power company that company would have to create or acquire some other adequate source of supply in order to continue its service to the public. A company which is primarily engaged in the production of coal and coke but also devotes certain facilities owned and operated by it in this State to the generation, sale and distribution of electricity to the general public for a period of several years, and subsequently transfers its transmission and distribution facilities to another company and after such transfer continues to devote the facilities owned and operated by it to the generation and sale of electricity for sale and distribution by the other company to the general public, is, to the extent that it generates and sells the electricity which the other company sells and distributes to the general public, a public utility and, as such, is subject to the jurisdiction of the public service commission of this State. *Wingrove v. Public Service Commission,* 74 W. Va. 190, 81 S. E. 734, L.R.A. 1918A, 210. See also *Hartford Electric Light Company v. Federal Power Commission,* C.C.A., Second Circuit, 131 F. 2d 953; *Southern Oklahoma Power Company v. Corporation Commission,* 96 Okla. 53, 220 P. 370. By

virtue of the original status of the coke company as a public utility, which has not in any wise been discontinued, and by virtue of the applicable provisions of the statute, the coke company in the generation and sale to the power company of electricity which that company sells and distributes to the general public is a public utility and as such is subject to the jurisdiction of the public service commission.

Though as a general rule public utilities have the right to enter into contracts between themselves or with others, free from the control or supervision of the state, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties, the principle is firmly established that all contracts made by a utility relating to the public service must be deemed to be entered into in contemplation of the exercise by the state of its regulatory power whenever the public interest may make it necessary; and when such contracts are the subject of statutory regulation, no contract for service may be made by a public utility except as provided by law, although an otherwise valid contract is binding on the parties to it until a departure from such contract has been directed by competent authority. 73 C.J.S., Public Utilities, Section 5; 43 Am. Jur., Public Utilities and Services, Section 98.

In *City of Benwood v. Public Service Commission,* 75 W. Va. 127, 83 S. E. 295, L.R.A. 1915C, 261, this Court held in point 1 of the syllabus that ''The Public Service Commission has power to change any intrastate rate for service rendered the public, when to do so will conflict with no paramount law or constitutional inhibition.''; and in point 7 of the syllabus that ''Where, by franchise or ordinance, public service rates within a municipality have been fixed and accepted as between a public service corporation and the public, without express delegation of power in such particular by the legislature to the municipality, a change of the rates by the Public Service Commission

does not impair the obligation of a contract.'' In the opinion in that case this Court said:

"We do not say that the contract as to rates contained in the franchise was not good as between the water company and the city as long as the Legislature did not exercise its superior and supreme power over the subject of the rates. From the general powers to establish water works and to contract and be contracted with, impliedly the city had the power to contract in the matter of rates for water furnished the public as long as the Legislature did not exercise its reserved power in that particular. But that implied power was inferior to the reserved power. It was subject to the right of the Legislature to prescribe different rates at any time. * * * .

"The water company and the city in the making of the so-called franchise contract were bound by cognizance of the fact that their dealings were subject to future exercise of the Legislature's power over rates for water furnished the general public in the locality. Hence the franchise was made subject to what the Legislature might thereafter do as to the rates dealt with by the franchise. It was subject to the Legislature's making use of the inherent power, reserved and not exclusively delegated to the City of Benwood, to supervise all public service charges. And when the Legislature in its wisdom saw fit to exercise its reserved power of supervision over the matter of public service rates by the creation of the Public Service Commission and the delegation of the power to the commission in that behalf, the rates mentioned in the franchise became subject to supervision and regulation by the Public Service Commission. * * * . ''

The opinion also contains this pertinent language: "The contract having been entered into without express legislative authority, was permissive only. It was conditioned upon the exercise of the sovereign power over the subject matter. All this the parties to

the contract were bound to know when they entered into it. There can be no impairment of the contract by the act of the State in claiming its own, when it is not bound by the contract. The supervision and regulation of the rates by the State, through the Public Service Commission, does not take from either of the parties to the contract any right which they had thereunder. Such supervision and regulation does not therefore impair the obligation of a contract.''

In *Mill Creek Coal and Coke Company v. Public Service Commission,* 84 W. Va. 662, 100 S. E. 557, 7 A.L.R. 1081, this Court held in point 9 of the syllabus that ''Private contract rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict.'' The opinion in that case contains these statements: ''Surely it is in the interest of public convenience and of the general welfare that rates of public utilities be subject to regulation, both as a protection against extortionate charges and at the same time for the purpose of safeguarding to a utility so restricted a reasonable return upon its investment. It must of course be recognized that a peculiar sanctity inheres in contracts entered into between parties competent to contract, and that the obligations thereby imposed will not lightly be disturbed. But the same policy that forbids to a utility total freedom of action likewise limits the extent to which contracts with a utility will be recognized when the public need necessitates a partial or total annulment. The duty of the utility to subordinate its right of control over rates in the interest of the public welfare is balanced by a corresponding duty on the part of individuals contracting with such utility to subordinate their rights of contract to the same public welfare. The police power of the state is impartial between utility and contractors, requiring both to surrender rights for the general weal. The public need to preserve the utility is strong financial condition in order that it may better serve is frequently as important as the need to guard the public against extortion. The right of

the utility to protection must not be permitted to grow dim in the presence of that other and more popular right of exercising a control over its functions. Both subserve the same public purpose."

In *United Fuel Gas Company v. Public Service Commission*, 73 W. Va. 571, 80 S. E. 931, in considering contracts of a natural gas company with consumers of natural gas for exclusive service for a term of years in consideration of reduced rates, this Court used this pertinent language: "As all such contracts are subject to the superior authority of the State, through its legislature, in the exercise of its police power, and are presumed to be entered into with knowledge of this superior authority of the State, and whatever effect lawful legislation may have upon such contracts, they are not within the protecting aegis of the federal Constitution, or thereby unlawfully impaired. This rule applies as well to contracts entered into by way of compromise of pending suits, as to any other class of contracts affected. This familiar law requires no citation of authority."

In *City of Charleston v. Public Service Commission*, 86 W. Va. 536, 103 S. E. 673, this Court said that a provision in a franchise, granted by a municipal corporation to a water company, requiring the company to furnish free water service to the municipality was discriminatory and was subject to annulment by order of the public service commission without unlawfully impairing contractual obligations. In *Mountain State Water Company v. Town of Kingwood*, 121 W. Va. 66, 1 S. E. 2d 395, this Court held that under the provisions of Sections 2 and 3, Article 2, Chapter 24, Code, 1931, the public service commission has the authority to regulate rates for service rendered by a public utility to a municipality, notwithstanding any pre-existing contractual rights between the municipal corporation and the utility.

In *Union Dry Goods Company v. Georgia Public Service Corporation*, 248 U. S. 372, 39 S. Ct. 117,

63 L. Ed. 309, 9 A.L.R. 1420, the Supreme Court of the United States affirmed the judgment of the Supreme Court of Georgia, 142 Ga. 841, 83 S. E. 946, L.R.A. 1916E, 358, holding valid rates for electricity for light and power authorized by the Railroad Commission of that State, which were in excess of rates stipulated in a contract between Georgia Public Service Corporation, the utility, and Union Dry Goods Company, the consumer. The consumer refused to pay the higher rate than that provided by the contract and instituted a suit to compel specific performance of the contract by the utility and to enjoin it from charging the higher rate and from ceasing to supply electricity to the consumer because of its refusal to pay the higher rate. The consumer challenged the validity of the authorized rates on the ground that the obligation of the contract was impaired and that the consumer was deprived of its property without due process of law by the decision of the Supreme Court of Georgia which held that the rates prescribed by the Railroad Commission were valid and superseded the rates fixed by the contract between the ultility and the consumer. In rejecting those contentions the court, citing *Manigault v. Springs,* 199 U. S. 473, 26 S. Ct. 127, 50 L. Ed. 274, said that ''private rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict,'' and, citing *Atlantic Coast Line Railroad Company v. City of Goldsboro,* 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721, also said that neither the ''contract'' clause nor the ''due process'' clause of the Federal Constitution had the effect of overriding the power of the State to establish all regulations reasonably necessary to secure health, safety, good order, comfort, or general welfare of the community and that all contract and property rights are held subject to the fair exercise of such power. See also 73 C.J.S., Public Utilities, Sections 16a and 16b; 43 Am. Jur., Public Utilities and Services, Section 98.

From the foregoing authorities it is clear that the

public service commission of this State has the authority to supervise, regulate, modify or approve a contract between public utilities subject to its jurisdiction which affects the service rendered to the public or the rate charged for such service. As the coke company, for the reasons heretofore stated, is a public utility and as such is subject to the jurisdiction of the commission, as is also the power company, and as the contract between them dated May 14, 1956, fixing the rates at which the electricity generated by the coke company is sold and delivered to the power company which distributes and furnishes such electricity to the general public, directly affects the cost of such public service, the public service commission has the power and authority to supervise and regulate the rates dealt with in that contract and, in the exercise of such power and authority, to approve, revise, modify or establish any and all such rates for the sale of electricity by the coke company to the power company for use in the service which it renders to the general public.

The rule heretofore awarded is discharged and the writ for which the petitioner prays is denied.

*Writ denied.*