HARRY C. BOGGS

*v.*

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA
*and* SPENCER GAS COMPANY,
*a corporation*

(No. 12903)

Submitted February 11, 1970.        Decided April 21, 1970.

Dissenting Opinion May 15, 1970.

*Stone, Bowles, Kauffelt & McDavid, T. D. Kauffelt,* for petitioner.

*John E. Lee, Cassius H. Toon,* for respondent Public Service Commission.

*Charles E. Anderson,* for respondent Spencer Gas Co.

CAPLAN, JUDGE:

By its order dated October 1, 1969, the Public Service Commission of West Virginia required Harry C. Boggs "to continue gas service to the Spencer Gas Company under the same rates and conditions heretofore agreed on by the parties until further order of this Commission or of a Court having jurisdiction." It is from that order that Harry C. Boggs, sometimes hereinafter referred to as "Boggs" or "appellant", prosecutes this appeal.

This controversy began when Spencer Gas Company, on September 5, 1968, filed with the Public Service Commission its complaint against Boggs requesting the Commission to require Boggs to withdraw his demand for an increase in the price of gas being supplied to Spencer Gas and to adhere to the terms of a certain contract which was before the Commission in 1935, to which contract further reference will be made. In his answer to the complaint Boggs asserts that he is not a public utility and is therefore not subject to the jurisdiction of the Public Service Commission. This assertion fairly reflects the principal issue on this appeal—is Boggs, in the circumstances of this case, subject to the jurisdiction of the Commission?

In order to resolve this issue it is necessary to examine and consider the events which led to this controversy. Prior to and during the year 1935, a subsidiary of Commonwealth Gas Corporation, the Ohio Valley Gas Corporation, hereinafter sometimes called "Ohio Valley", operated as a public utility, supplying and selling natural gas to consumers in Roane and Calhoun counties, West Virginia. On November 15, 1935 Ohio Valley filed a petition with the Public Service Commission "for the consent and approval to the sale of its franchises and natural gas distribution system serving domestic consumers in the city of Spencer, Roane County, West Virginia, and other domestic rural consumers situate in Roane and Calhoun Counties, West Virginia to SPENCER GAS COMPANY, a West Virginia corporation." The petition set out the financial condition of the parties and designated in detail the properties to be conveyed.

These properties consisted of the natural gas distribution system in the Town of Spencer and in addition thereto certain facilities for the distribution of natural gas to rural consumers who had tapped on Ohio Valley's transmission and gathering lines. At the time of the 1935 petition there were approximately 160 rural consumers. In the present proceeding the evidence reveals that this number has increased to approximately 400. In relation to the facilities serving these rural consumers, the properties sought to be conveyed were the meters, regulators, fittings and other appliances which connected the consumers' line to Ohio Valley's transmission and gathering lines. The rural consumers continue to be served directly from the transmission line, now the property of Boggs.

It was further alleged in the petition that the proposed sale of Ohio Valley's facilities for distribution at retail of natural gas would have no effect upon the service for the reason that the service formerly furnished by the petitioner would be carried on by Spencer Gas under the terms of "an advantageous gas supply contract, insuring to the purchaser and its consumers adequate reserves of natural gas."

After a hearing on the petition, the Public Service Commission, by its order dated November 27, 1935, consented

to and approved, upon certain conditions, the proposed sale by Ohio Valley to Spencer Gas Company. Two of these conditions were that Ohio Valley and Spencer Gas Company enter into the proposed contract which was filed in that proceeding as Exhibit No. 1, and that said parties comply with and adhere to said contract and other commitments made at the hearing as reflected by the transcript of testimony taken at said hearing. It was found by the Commission, as noted in the aforementioned order, that the public would not be inconvenienced by the sale as prayed for in the petition, provided "that said contract shall be binding upon any successor in title of the petitioner."

In the recitals of the contract referred to above and in the Commission's 1935 order as Exhibit 1 in that proceeding, it is stated that Ohio Valley, with the consent and approval of the Public Service Commission, sold to Spencer Gas Company all facilities theretofore owned by it, used for the distribution at retail of natural gas; that Ohio Valley still owned and operated certain transmission lines which extended from its natural gas wells to the Town of Spencer; and that Spencer Gas Company owned and operated certain other facilities used for the distribution at retail of natural gas to rural consumers, which facilities were connected to the transmission lines of Ohio Valley Gas.

By the terms of the contract Ohio Valley agreed to sell natural gas to Spencer Gas Company in such quantities as were needed by the latter to service its retail customers, for such a period of time as Ohio Valley shall have natural gas available from its then sources of supply. The agreement contained the manner of payment for the gas so sold and purchased and provisions relating to deliverability, points of delivery and other pertinent matters.

From 1935 to 1964 Ohio Valley Gas and its successors, all affiliates of Commonwealth Gas Corporation, complied with the 1935 order of the Public Service Commission and adhered to the terms of the contract referred to therein. In 1964 Commonwealth, into which Ohio Valley had merged, conveyed to Boggs its production properties and pipeline system

in Roane and Calhoun Counties. In the Deed and Assignment, dated April 1, 1964, by which this conveyance was made, Boggs agreed that he would "keep and perform all of the covenants and agreements required to be kept and performed by the party of the first part."

From the time of that conveyance on April 1, 1964, Mr. Boggs and Spencer Gas Company engaged in the business of selling and buying natural gas in the same manner as it had been carried on in prior years by Boggs' predecessors. Several increases in the price of natural gas had been agreed upon throughout the years, the last agreed price being 38¢ per Mcf.

By letter dated July 12, 1968, Boggs notified Spencer Gas Company of an increase in the price of gas, as follows: "Effective August 15, 1968 all gas delivered to the Spencer Gas Co. will be billed at the rate of $.60 per mcf and $.10 per mcf will be charged for the transportation and measurement of make-up gas." The make-up gas referred to is gas which Spencer Gas Company purchases from Consolidated Gas Supply Corporation and which, when needed, is transported through Boggs' transmission line. This had formerly been permitted by Boggs and his predecessors as an accommodation to Spencer Gas, no charge therefor having been made. Alleging that Boggs has threatened to terminate deliveries of gas unless his demands were met, Spencer filed this complaint.

As herein noted, the question to be answered on this appeal is whether Boggs is subject to the jurisdiction of the Public Service Commission. Much testimony was adduced at the hearing of this matter which related to the deteriorated condition of the system purchased by Boggs. He testified that it would require the expenditure of large sums of money to transform this system, consisting principally of transmission and gathering lines, into a workable and profitable venture. Boggs related that in view of these considerations he was losing money at 38¢ per Mcf.

The cost of the operation of the system and matters relating thereto are not pertinent on this appeal. If Boggs is not operating under the jurisdiction of the Public Service Commission he is at liberty, subject to the terms of the contract in the instant case, to charge for his gas whatever price he deems necessary to bring him a return in any amount to which he believes he is entitled. However, if Boggs, in the circumstances of this case, is subject to the Commission's jurisdiction, then the price he charges for gas is a concern of that Commission and is subject to regulation. In the latter event, the matters of which Boggs complains, that is, the losses he sustains by reason of defective lines, faulty meters and other causes, may be presented in a proper proceeding before the Commission. If proved, the Commission will consider such matters in adjusting rates so as to allow a just and reasonable return on his investment.

The extent of the jurisdiction of the Public Service Commission is set out in Code, 1931, 24-2-1, as amended, as follows:

> "The jurisdiction of the Commission shall extend to all public utilities in this State, and shall include any utility engaged in any of the following public services: * * * transportation of oil, gas or water by pipeline, * * * supplying water, gas or electricity; * * * and any other public service."

The words "public utility," as used in Code, 1931, Chapter 24, Public Service Commission, shall mean and include "any person or persons, or association of persons, however associated, whether incorporated or not * * * engaged in any business * * * which is, or shall hereafter be held to be, a public service." Code, 1931, 24-1-1.

Although the authorities agree that it would be difficult to formulate a definition of the term "public utility" that would fit every conceivable case, "the distinguishing characteristic of a public utility is the devotion of private property by the owner or person in control thereof to such a use that the public generally, or that part of the public which has been served and has accepted the service, has the right to

demand that the use or service, as long as it is continued, shall be conducted with reasonable efficiency and under proper charges." 73 C.J.S., *Public Utilities*, Section 1.

In the light of the foregoing Code provisions and definition, it is necessary to now look to the background and circumstances of Boggs and his predecessors in title to determine whether he is subject to the jurisdiction of the Public Service Commission. It is undisputed that Ohio Valley, in 1935 and prior thereto, in furnishing gas service to consumers in the Town of Spencer and to rural users in Calhoun and Roane counties, was a public utility operating under the jurisdiction of the Public Service Commission. Its properties used in dispensing that service were dedicated to a public use over a period of many years.

When Ohio Valley, with the consent and approval of the Commission, conveyed its distribution system which served the Town of Spencer, it retained its transmission and gathering lines from which rural customers received gas service. Although these rural consumers were customers of Spencer Gas Company, the lines from which they were directly served remained the property of Ohio Valley and continued to be devoted to public use.

The appellant contends that in Case No. 2415, the 1935 proceeding referred to herein, Ohio Valley requested and was granted permission to be divested of its status as a public utility. Consequently, says Boggs, a predecessor in title to his properties having ceased to be a public utility, he could not be charged with that status. An examination of the petition, the transcript of testimony and the Commission's order in that case fails to support that contention.

The petition of Ohio Valley was essentially a request for the consent and approval of the Public Service Commission to and of the sale of certain properties by one public utility to another public utility. That petition contains no formal prayer but there are certain recitals upon which the appellant apparently relies. It recites that the petitioner, Ohio Valley, is not primarily engaged in the public utility gas business;

that approximately 94 per cent of the gross business transacted by it and its wholly owned subsidiaries consists of producing and purchasing natural gas for resale in wholesale quantities to pipeline companies; and that the consumers could be better served by a distributing company whose sole operation consists of engaging in the public utility business.

Ohio Valley noted in its petition that it was a subsidiary of Commonwealth Gas Corporation and that if the proposed sale was not consumated prior to December 1, 1935, the petitioner would, under the terms of the Public Utility Holding Company Act of 1935, passed by Congress, become a public gas utility subject to the provisions of said Act. The significance of this recital is not entirely clear, but it certainly does not constitute a request to relieve it of its status as a public utility.

On the other hand, the petition clearly acknowledges that the petitioner will continue to retain ownership of its transmission and gathering lines. It readily acknowledged that rural customers will continue to be served from those lines. The petitioner recited that the service to the consumers would not be adversely affected because the purchaser would carry on the business "under the terms of an advantageous gas supply contract, insuring to the purchaser and its consumers adequate reserves of natural gas."

An examination of the 1935 order of the Commission, wherein it gave its conditional consent and approval to the sale of properties by Ohio Valley to Spencer Gas Company, unquestionably shows that the Commission intended to and did require the remaining facilities serving consumers to continue to be devoted to the public service in the same manner as they had been in the past. The Commission gave its approval upon the express condition that the petitioner and its successors continue to serve gas to all of its consumers so long as gas was available. The fact that such conditions were embodied in a contract and that the Commission referred to the contract does not indicate that the Commission is

relying on the contract as a basis for its jurisdiction. Its jurisdiction is based on its holding that the transmission and gathering lines of Ohio Valley and its successors, including Boggs, continue to be devoted to the public service.

The Public Service Commission was created by the Legislature for the purpose of exercising regulatory authority over public utilities. Its function is to require such entities to perform in a manner designed to safeguard the interests of the public and the utilities. Its primary purpose is to serve the interests of the public. 73 C.J.S., *Public Utilities*, Section 32. *Delardas v. Morgantown Water Commission*, 148 W.Va. 776, 137 S.E.2d 426. In view of the obvious importance of such regulation the Public Service Commission's jurisdiction over facilities serving the public should not be considered to be terminated unless the action of the Commission and the circumstances surrounding the case demonstrate clearly and unequivocally its intent to relinquish such jurisdiction. Here, no such clear and unequivocal intent is evident.

Having found that Ohio Valley was not divested of its status as a public utility in the 1935 proceeding, placing Boggs, a successor in title, in the same position, we find that the decision in *Preston County Light and Power Company v. Renick*, 145 W.Va. 115, 113 S.E.2d 378, is controlling in the instant case. In *Preston County* the Court held that when facilities of a public utility have been devoted to the public service over a long period of time, such utility cannot cease to operate as such unless it applies for and receives from the Public Service Commission permission to terminate its public utility status. The Court said: "The well established general rule is that when a public utility has undertaken the rendition of public service it can not discontinue such service at will but is under a duty to continue its service to the public." Cited in support thereof is 43 Am. Jur., *Public Utilities and Services*, Section 78.

Pertinent to this consideration is the Court's holding in *Clarksburg Light & Heat Company v. Public Service Commission*, 84 W.Va. 638, 100 S.E. 551, wherein it said, in Point

5 of the Syllabus: "Whenever any business or enterprise becomes so closely and intimately related to the public, or to any substantial part of a community, as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business, it becomes the subject for the exercise of the regulatory power of the state."

In the instant case the transmission line, formerly owned by Ohio Valley and since 1964 by Boggs, has served the rural consumers in Roane and Calhoun counties continuously since 1935 and prior thereto. This constitutes a dedication or devotion of that line to the public service and, in accordance with the principles set out in *Preston County,* supra, that facility will continue to be so dedicated and Boggs will continue to operate as a public utility unless he obtains from the Public Service Commission permission to terminate his status as such. We are in agreement with the Commission's finding that Ohio Valley was not divested of its public utility status in the 1935 proceeding.

The appellant asserts that the fact that the Commission has never exercised its jurisdiction over him or his predecessors since the 1935 sale of the utility properties lends further proof of his status as a nonutility. This assertion was refuted in the *Preston County* case in the following language: "* * * the mere failure of the coke company to comply with the foregoing requirement or to invoke the jurisdiction or the regulatory power of the commission for a long period of time, or the mere failure of the commission affirmatively to assert in any manner its jurisdiction with respect to the public service rendered by the coke company did not, and could not, divest the coke company of its original status as a public utility."

In further support of his contention that he is not subject to the jurisdiction of the Commission, Boggs relies on *Wilhite v. Public Service Commission of West Virginia and Consolidated Gas Supply Corporation,* 150 W.Va. 747, 149 S.E.2d 273. That case is readily distinguishable from the instant case. Wilhite, together with his partner, engaged in drilling

for gas and transporting it through their pipeline to two industrial customers in the Clarksburg area. Their line had never served the public nor was it ever held out to be for public use. It had never been dedicated to public use as have the Boggs facilities in the instant case. Clearly the Wilhite undertaking was a private as opposed to a public business, leading the Court to correctly hold that the Public Service Commission had no jurisdiction thereover.

In this case the Public Service Commission found as a matter of fact that the subject transmission and gathering lines have been dedicated to public use over a long period of time. Applying the law to this finding of fact, the Commission concluded that it has retained its jurisdiction over these facilities and consequently over Boggs. We cannot say that the finding of fact or the conclusion of law based thereon is wrong. This proposition is well expressed in *United Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33, 99 S.E.2d 1, as follows: "The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." See also *The City of Huntington v. State Water Commission*, 137 W.Va. 786, 73 S.E.2d 833; *Town of Harrisville v. Public Service Commission*, 103 W.Va. 526, 138 S.E. 99; and *City of Huntington v. Public Service Commission*, 89 W.Va. 703, 110 S.E. 192.

For the reasons herein stated the order of the Public Service Commission is affirmed.

*Affirmed.*

BROWNING, PRESIDENT, dissenting:

I dissent. I agree with all five of the syllabus points of the majority and in every case that is cited in the majority opinion. Not one, however, is applicable to the facts of this case. For example, the majority relies upon *Preston County Light & Power Company v. Renick*, 145 W.Va. 115, 113 S.E.2d

378. In that case it was held that the utility company had not ceased to be such and was still bound by the Public Service Commission. The heart of the decision was this paragraph:

> Under the quoted provisions of the statute and the decisions of this Court in the two above cited cases, the coke company, if it is a public utility, could not discontinue its generation and sale to the power company of the electricity which that company distributes and furnishes to the public or, by discontinuing such generation and sale, divest itself of its status of a public utility, unless the coke company obtains authority from the commission so to do. This the coke company has not done or attempted to do at any time.

In other words, that company had not complied with Code, 24-3-1, 1931, as amended, which provides in part that: "No railroad or other public utility shall discontinue any regular passenger train, or other public service facility . . . without first obtaining authority from the commission so to do, unless the same be done under uniform rules and regulations filed by such railroad or public utility with the public service commission and approved by said commission."

Prior to 1935, the appellant's predecessor, Ohio Valley Gas Company, served retail gas customers in portions of Spencer, West Virginia, from a distribution system, and a few rural customers in Roane and Calhoun counties from its transmission lines. The distribution portion of Ohio Valley's business constituted only about six per cent of its entire enterprise. In view of that fact, Ohio Valley decided to abandon its distribution business and confine its activities wholly to the gathering and transmission of gas as a wholesaler and filed a petition, as provided by statute, with the Public Service Commission alleging it had entered into an agreement with Spencer Gas Company to convey to the latter all its distribution business and remain only in the transmission business thereby relieving it from supervision by the Public Service Commission. In its petition before the Commission in 1935 Ohio Valley alleged "that the proposed sale, if consented to

and approved, will segregate that part of the petitioner's business that is subject to regulation from its other business." The Public Service Commission entered a formal order segregating the transmission and distribution systems of the petitioner and for almost thirty-five years it remained wholly in the transmission business with the Spencer Gas Company being one of its customers. Over that period the rate was raised several times without objection by anyone. On September 5, 1968, Spencer Gas Company filed a complaint against Boggs, successor to Ohio Valley, upon the ground that Boggs was still under the jurisdiction of the Public Service Commission. The Public Service Commission so held and this Court granted this appeal.

It is true as stated in the majority opinion that some rural customers still get gas from the transmission line of Boggs, but Boggs sells no gas to anyone in that area but Spencer Gas Company, and it is through the latter's meters that the consumers get their gas. In my opinion the instant case is directly in point with the recent case of *Wilhite v. Public Service Commission*, 150 W.Va. 747, 149 S.E.2d 273. In that case this Court held that the transportation by an individual of his own gas and the sale of such gas to two customers, there being *no holding out to the public generally*, does not bring an individual within the authority of the Public Service Commission. For a discussion of the *Wilhite* case, see Comment, 69 W. Va. L. Rev. 92 (1966). It is true that Boggs' predecessor was once under the supervision of the Public Service Commission but in my opinion the order of the Commission of 1935 pursuant to the statute heretofore quoted clearly relieved Boggs' predecessor of any control by the Public Service Commission. It became an independent wholesaler who could sell to whomever it chose, and even though in this instance the predecessor did agree to continue to supply the gas to the area, it was not under the control of the Public Service Commission and not subject to any rate other than that agreed to by the petitioner.

I would reverse the order of the Public Service Commission for the reasons stated herein.