590 S.E.2d 647

Richard T. McELHINNEY and Catherine A. McElhinney, Appellants

v.

THE WEST VIRGINIA PUBLIC SERVICE COMMISSION and Consumers Gas Utility Company, A Public Utility, Appellees

No. 31311.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 5, 2003.

Decided Nov. 21, 2003.

Richard T. McElhinney and Catherine A. McElhinney, Pro Se.

Ronald E. Robertson, Jr., Esq., Charleston, for The West Virginia Public Service Commission, Appellee.

Thomas N. Hanna, Esq., Charleston, for Consumers Gas Utility Company, Appellee.

PER CURIAM.

This is an appeal by Richard T. McElhinney and Catherine A. McElhinney, his wife, from a decision of The West Virginia Public Service Commission refusing to grant them a refund on their gas bill. In refusing to grant the refund, The West Virginia Public Service Commission overruled a recommendation of a hearing examiner that the McElhinneys receive the refund. On appeal, the McElhinneys claim that The West Virginia Public Service Commission should have adopted the hearing examiner's recommendation.

## I.

### FACTS

The appellee, Consumers Gas Utility Company, installed a new gas meter at the McElhinneys' Spencer, West Virginia, home on November 9, 2001. The company checked the meter on November 12, 2001, and found that there was no problem with it.

Subsequently, in January 2002, the appellant, Richard T. McElhinney, detected the odor of gas in the vicinity of the meter, and contacted Mathew Bowen, an employee of a hardware store located near the McElhinney home. Mr. Bowen, who had had no professional training with gas meters, routinely hooked up natural gas and propane stoves for the hardware store. In so doing, he was accustomed to checking for gas leaks. When he arrived at the McElhinney home, Mr. Bowen, like Mr. McElhinney, smelled gas in the vicinity of the meter, and after Mr. McElhinney spread a soapy water (or detergent) solution on the meter and connecting pipe, Mr. Bowen observed bubbles. Mr. Bowen concluded that there was some type of leak at the meter.

Mr. McElhinney also contacted Consumers Gas Utility Company, the company which had installed the meter. The company sent Benny Carper and David Perkins to the McElhinney house. When they arrived, they observed the bubbling solution on the meter, and according to Mr. McElhinney, Mr. Carper smeared pipe dope where the bubbles had been observed, and he also tightened the pipe leading to the meter. More soap solution was poured on the area, the fittings were tightened again, and eventually the bubbling stopped.

Subsequently, Mr. McElhinney and his wife, who believed that their gas bills had been too high, filed a complaint with The West Virginia Public Service Commission and requested that the Public Service Commission order that the gas company give them a refund of $140.61 for what they characterized as overcharges occasioned by a gas leak.

The matter was ultimately referred to a hearing examiner who conducted a hearing on July 8, 2002. Mr. and Mrs. McElhinney testified at that hearing as to the events leading to the filing of their complaint, and they introduced pictures of their gas meter with large soapy bubbles at the point where a pipe joined it. They also called as a witness Mathew Bowen, the hardware store employee, who expressed the opinion that there was a gas leak. Benny Carper, the field representative for Consumers Gas Utility Company who investigated the McElhinneys' complaint, also testified. Mr. Carper acknowledged that when Mr. McElhinney

applied a soap solution to the meter and connecting pipes, the solution on the spud bubbled out. He, however, also testified that he did not smell gas in the area and that when he applied the "five-second leak detector solution," no leak was discovered. Finally, he stated that he and Mr. Perkins had removed the "spud" and re-doped it in order to make the McElhinneys happy.

David Perkins, who accompanied Mr. Carper, testified that he and Mr. Carper applied the "five-second leak detector solution" to the meter and pipe at the McElhinneys' two or three times on January 31, 2002. The solution did not indicate a leak. He, however, acknowledged that when Mr. McElhinney put his soap or detergent solution on the meter, it bubbled. Mr. Perkins expressed the opinion that there was no gas leak because he, like Mr. Carper, did not smell the odor of gas.

Jerry Watson, Division Manager of Consumers Gas Utility Company, investigated the McElhinneys' complaint. He reviewed the McElhinneys' meter readings, and he concluded that compared to other people's readings, the McElhinneys' readings were within normal range.

Another witness, an employee of The West Virginia Public Service Commission, Eric deGruyter, investigated the meter after the January 2002 visit by Mr. Carper and Mr. Perkins. He testified that he believed that the meter was correctly installed at the time of his examination. He stated that while he was not at the McElhinneys' residence on January 31, 2002, there was some evidence suggesting that there might have been a leak. He believed that bubbles which appeared in the pictures which were taken of the bubbling solution originated from the two threaded parts of the meter nipple, a typical place for gas leaks to occur. He also indicated that a diluted soap or detergent solution, such as was used by Mr. McElhinney, could be used in place of the "five-second leak detector" solution and that he himself used the detergent solution when testing his own equipment.

After the conclusion of the hearing, the hearing examiner in the case made findings of fact and conclusions of law and prepared a recommended decision. The hearing examiner noted that Mr. Bowen, the hardware store employee, had concluded that there was a gas leak after he had smelled gas in the area of the meter and had observed bubbles when the solution was applied to the meter. The hearing examiner also found that Eric deGruyter, the Public Service Commission employee, noted that the bubbles in the McElhinney photographs were at a place where leaks typically occurred.

The hearing examiner concluded that the evidence established that there was a gas leak, and, as a consequence, recommended that the McElhinneys receive an adjustment on their gas bill. Specifically, the hearing examiner stated: "It is reasonable to grant the McElhinneys' request for an adjustment to their bill of $140.61, inasmuch as the Complaintants have provided evidence that a leak occurred at their residence and they have not lived at the location long enough to establish a pattern of historical gas usage."

The matter was subsequently considered by The Public Service Commission which stated that the McElhinneys' gas usage did not exceed 9000 cubic feet during the months in question, which was within the average monthly usage for residential customers in the State of West Virginia, and since the usage was within normal range, the Public Service Commission found that the complaint did not prove the presence of a gas leak by a preponderance of the evidence, and, therefore, rejected the hearing examiner's recommendation. When asked to reconsider its decision, The Public Service Commission refused to alter its conclusion.

It is from the refusal of The Public Service Commission to grant relief and adopt the recommendation of the hearing examiner that the McElhinneys now appeal.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 5 of *Central West Virginia Refuse, Inc. v. Public Service Commission of West Virginia*, 190 W.Va. 416, 438 S.E.2d 596 (1993), this Court reiterated the longstanding rule relating to the standard of

review in public service commission cases. The Court stated:

" 'The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. Public Service Commission,* 143 W.Va. 33 [99 S.E.2d 1 (1957)]." Syllabus Point 5, *Boggs v. Public Service Commission,* 154 W.Va. 146, 174 S.E.2d 331 (1970).

### III.

### DISCUSSION

■ As has previously been indicated, the decision of the West Virginia Public Service Commission is predicated upon the finding that Richard T. McElhinney and Catherine A. McElhinney, the appellants, did not prove by a preponderance of the evidence the presence of a gas leak at their premises.

In reaching its decision, the Public Service Commission stated:

Whether a leak exists at the meter is the crux of this case. The Complainants and Mathew Bowen, an employee of MacIntosh Hardware, testified that a leak appeared to exist. (Tr. pp. 7–1, 16–17. Complainants' Exhibits 1, 2, 3.) Witnesses for the Company testified that a leak did not exit. (Tr. pp. 18, 88, 89, 90, 112, 114, 46, 132, 133, 134.) Determining the existence of a leak from the testimony is problematic at best. And although the Company witnesses acknowledge the existence of bubbles forming after the application of the Complainants' soap solution to the meter, the five-second leak detection solution applied by the Company's witnesses did not evidence a leak.

The Commission then analyzed the McElhinneys' gas usage. The Commission found that analysis showed that the usage by the McElhinneys during the months in question was within a reasonable range of usage, and, consequently, the Commission concluded:

Based on a comparison of the Complainant's usage to the statewide average monthly usage figure, and the lack of other objective evidence, the Commission concludes that the Complainant did not prove the existence of a leak by a preponderance of the evidence.

After examining the record, this Court believes that there was, contrary to the conclusion of the Public Service Commission, objective evidence of a leak. Both Richard T. McElhinney and Mathew Bowen testified that they smelled natural gas in the vicinity of the gas meter. Various witnesses testified that the soapy water or detergent solution placed on the meter produced bubbles. Even Benny Carper, the field representative for the gas company, acknowledged that bubbles appeared when the soap solution was placed on the "spud" at the meter. In addition to the testimony, the McElhinneys introduced photographs of the meter plainly showing the bubbles, a fact acknowledged by the Public Service Commission, which stated: "On July 15, 2002, the Complainants supplemented the record with an enlarged copy of one of their photographic exhibits, showing bubbles on the meter." Finally, Eric deGruyter, the Public Service Commission representative who investigated the meter complaint, stated that he believed that the bubbles which appeared in Mr. McElhinney's pictures originated from threaded parts of the nipple of the meter, or adjacent to the meter, a typical place for gas leaks to occur.

After examining all of the evidence presented, this Court believes that there was substantial evidence, including even the testimony of the gas company's witnesses, from which it reasonably can be inferred that a gas leak did occur. Additionally, the Court believes that the Public Service Commission's finding that the McElhinneys failed to prove the existence of a leak by a preponderance of the evidence is contrary to the evidence presented, and that, as a consequence, the Public Service Commission erred in failing to adopt the recommendation of the hearing examiner that a gas leak be acknowledged and that the McElhinneys be receive

458

an adjustment of $140.61 as a result of the gas leak.

The order of the Public Service Commission is, therefore, reversed, and this case is remanded with directions that the Public Service Commission direct that Consumers Gas Utility Company pay the McElhinneys a $140.61 refund on their gas bill.

Reversed and remanded with directions.

McGraw, J., dissented.