IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 22-0293

_____

FILED

**November 15, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EQUITRANS, L.P.,
Petitioner,

v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, RONALD HALL,
ASHTON HALL, AND HOPE GAS, INC., dba
DOMINION ENERGY WEST VIRGINIA,
Respondents.

_____

Appeal from the Public Service Commission of West Virginia
Case No. 20-0994-G-C

AFFIRMED
_____

Submitted: October 4, 2022
Filed: November 15, 2022

Thomas C. Ryan, Esq.
Emily C. Weiss, Esq.
K&L Gates LLP
Pittsburgh, Pennsylvania
and
Stephen E. Hastings, Esq.
Hendrickson & Long, PLLC
Charleston, West Virginia
Counsel for Petitioner

Natalie N. Terry, Esq.
Jessica M. Lane, Esq.
Public Service Commission of West
Virginia
Charleston, West Virginia
Counsel for Respondent Public Service
Commission

Ancil G. Ramey, Esq.
Todd M. Swanson, Esq.
Brien J. Fricke, Esq.
Steptoe & Johnson, PLLC
Charleston, West Virginia

Counsel for Respondent Hope Gas, Inc. d/b/a Dominion Energy West Virginia

Ronald L. Hall
Pine Grove, West Virginia
*Pro se*

Ashton Hall
Reader, West Virginia
*Pro se*

John R. Auville, Esq.
Robert F. Williams, Esq.
Charleston, West Virginia
Counsel for Amicus Curiae The Consumer Advocate Division of the Public Service Commission of West Virginia

Carte P. Goodwin, Esq.
Mary Claire Davis, Esq.
Frost Brown Todd LLC
Charleston, West Virginia
Counsel for Amici Curiae Diversified Production LLC and Diversified Midstream LLC

Robert R. Rodecker, Esq.
John R. McGhee, Jr., Esq.
Cynthia L. Wilson, Esq.
Kay Casto & Chaney PLLC
Charleston, West Virginia
Counsel for Amicus Curiae Peoples Gas WV LLC

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE BUNN, deeming herself disqualified, did not participate in this decision.
JUDGE SADLER sitting by temporary assignment.

JUSTICE ARMSTEAD concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.	"'The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.'  Syl. Pt. 1, *Cent. W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993)."  Syl. Pt. 2, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224 (2019).

2.	"The Public Service Commission of West Virginia has no jurisdiction and no power or authority except as conferred on it by statute and necessary implications therefrom, and its power is confined to the regulation of public utilities.  It has no inherent power or authority."  Syl. Pt. 2, *Wilhite v. Pub. Serv. Comm'n of W. Va.*, 150 W. Va. 747, 149 S.E.2d 273 (1966).

3.	"Whenever any business or enterprise becomes so closely and intimately related to the public, or to any substantial part of a community, as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business, it becomes subject for the exercise of regulatory power of the state."  Syl. Pt. 5, *Clarksburg Light & Heat Co. v. Pub. Serv. Comm'n of W. Va.*, 84 W. Va. 638, 100 S.E. 551 (1919).

4.      "Where the transmission line of a public utility has been used directly to serve retail rural consumers over a long period of time, such use constitutes a dedication of that line to the public service and such facility will continue to be so dedicated and the owner thereof will continue to operate as a public utility unless and until permission is obtained from the Public Service Commission to terminate such status."  Syl. Pt. 3, *Boggs v. Pub. Serv. Comm'n of W. Va.*, 154 W. Va. 146, 174 S.E.2d 331 (1970).

5.      "Jurisdiction of the Public Service Commission over a public utility will not be considered to be terminated unless the action of the Commission and the circumstances surrounding the case demonstrate clearly and unequivocally its intent to relinquish such jurisdiction."  Syl. Pt. 1, *Boggs v. Pub. Serv. Comm'n of W. Va.*, 154 W. Va. 146, 174 S.E.2d 331 (1970).

WOOTON, Justice:

Petitioner Equitrans, LC ("Equitrans") appeals the March 16, 2022, order of respondent Public Service Commission of West Virginia ("PSC") which ordered Equitrans to permit respondent Hope Gas ("Hope Gas") to connect a natural gas field tap on the property of respondents Ronald and Ashton Hall ("the Halls") to Equitrans' gathering line. On appeal, Equitrans argues the PSC lacked subject matter jurisdiction over this action insofar as the PSC has divested itself of jurisdiction over gathering facilities by legislative rule. The collective respondents counter—asserting several differing legal theories—that the PSC properly exercised jurisdiction over Equitrans' gathering facilities. Because we agree that the PSC properly exercised jurisdiction in this matter, we affirm the PSC's March 16, 2022, order. [1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Equitrans is a natural gas interstate pipeline company that owns and operates, among other things, so-called "gathering lines" — pipelines that transport natural gas from various wells to a central facility and then to an interstate pipeline. Of note, Equitrans does not own the gas transported through its lines, but it collects a fee for said transportation.

---

[1] The Court would like to acknowledge the participation in this case of the Consumer Advocate Division of the Public Service Commission of West Virginia and Peoples Gas WV LLC, who filed amicus briefs in support of the respondents, as well as Diversified Production LLC and Diversified Midstream LLC who filed amicus briefs in support of Equitrans. We have considered the arguments presented by the amici curiae in deciding this case.

Moreover, Equitrans does not provide utility gas distribution services, but other public utilities like Hope Gas and Mountaineer Gas tap into Equitrans' gathering lines, buy the gas, and distribute it to their customers. The particular line at issue in this appeal, L. No. H-13087, is used by Hope Gas to distribute natural gas to rural consumers via main line field taps.

In 2019, Equitrans sought to divest itself of its gathering facilities. In so doing, it applied to the Federal Energy Regulation Commission ("FERC"), which regulates interstate pipeline companies, to abandon and sell the gathering facilities. FERC approved that application on June 17, 2022, determining that it did not have any authority to reject it because it "has no jurisdiction over gathering facilities, whether such facilities are certificated or noncertificated." 179 FERC ORD. ¶ 61,204, *30 (2022) (citing 15 U.S.C. § 717(b)). More specifically, FERC stated, "as we have explained in this order, the Commission has no authority to deny the abandonment of the certificated gathering facilities. Where gathering facilities were never certificated, a pipeline need not even file an application with the Commission to abandon such non-certificated facilities." *Id*. FERC further stated that "Equitrans does not need [FERC] approval to abandon these facilities. While the parties argue that a permanent abandonment of the facilities is unnecessary, [FERC] has no authority to challenge Equitrans' decision to abandon [them]." *Id*. at *31. In light of FERC's recognition that it has no jurisdiction over gathering facilities, we take care to note that nothing in FERC's order intrudes upon the jurisdiction this Court or the PSC has over such facilities.

2

At the same time the action before FERC was pending, three separate complaints were filed with the PSC seeking to stop Equitrans from divesting itself of the gathering facilities and to continue natural gas service to the customers connected to its gathering lines. In the one subject to this appeal, the Halls asked Hope Gas to establish natural gas service for their residence located on 8 Mile Ridge Road in Reader, West Virginia. The property previously had natural gas service and an existing tap on the premises,[2] therefore service could be restored simply by placing a new gas meter on the property. Hope Gas denied the Halls' request for resumption of service, stating that Equitrans had denied its request to reestablish a service connection to the Halls' residence. Thereafter, the Halls filed a complaint with the PSC against Hope Gas.

On March 12, 2021, the PSC added Equitrans as a respondent to the Halls' complaint. At that time, Equitrans argued that the PSC lacked jurisdiction over its gathering facilities,[3] connection to which would establish service to the Halls' residence. In a recommended decision entered on August 12, 2021, an administrative law judge ("ALJ") found that, "[a]lthough Equitrans [owns] an interstate pipeline, the [PSC] has jurisdiction over Equitrans due to service obligations agreed to by Equitable Resources,

---

[2] It is not clear from the appendix record why natural gas service to the property was initially stopped.

[3] We note that the terms "gathering facilities" and "gathering line" are used interchangeably throughout the parties' briefs and the orders below. To the extent this opinion does the same, those terms are to be construed identically.

Equitrans' former parent company, in Case No. 07-0098-GT-G-PC." The ALJ reached this finding by relying on an affidavit (the "Crawford Affidavit") signed by Equitable Resources' senior vice president and president of midstream and distribution, Randall Crawford, during Equitable Resources' 2008 proposed corporate reorganization.[4] In relevant part, the Crawford Affidavit provides:

> Acceptance of the consent and approval granted in the Order shall constitute an agreement by Equitable Resources, Inc., Equitable Gas Company . . . and any Equitable Resources affiliates that neither they nor their successors shall discontinue service to any distribution system customer served on any of the isolated sections of the Equitable utility distribution system in West Virginia, that are not connected to the interconnected main system in Taylor, Marion and Harrison Counties, without first obtaining the authority of the Public Service Commission of West Virginia, and that they shall make service available to all future applicants who would be entitled to natural gas or transportation service from such isolated distribution facilities under the statutes and applicable regulations to the same extent as if a separation of properties had not taken place[.]

The record clearly shows that Equitrans was an affiliate or subsidiary of Equitable Resources at the time the Crawford Affidavit was executed.

On August 27, 2021, Equitrans filed exceptions to the ALJ's recommended decision, arguing that "it is a natural gas company subject only to regulation by the Federal Energy Regulatory Commission (['] FERC[']')" and that "the [PSC] lacks jurisdiction over

---

[4] Other than the execution of the Crawford Affidavit, the facts surrounding Equitable Resources' 2008 corporate reorganization are not pertinent to this appeal. However, we do note that after the corporate reorganization, Equitrans became an affiliate or subsidiary of Equitable Resources' successor-in-interest, NewHoldCo.

4

Equitrans and the gathering system and cannot require Equitrans to allow Hope [Gas] access to L. No. H-3087 to place a meter on the existing tap." Despite these exceptions, the PSC adopted the ALJ's recommended decision and, in an order dated March 16, 2022, found that it had jurisdiction over Equitrans' gathering facilities. In so doing, the PSC noted that it had previously found in a separate action that it had jurisdiction over Equitrans' lines under this Court's holding in *Boggs v. Public Service Commission of West Virginia*, 154 W. Va. 146, 174 S.E.2d 331 (1970), discussed *infra* in greater detail, because the line had "served rural field tap customers continuously for decades" such that it was dedicated to the public service. Equitrans now appeals that order, again arguing that the PSC lacked jurisdiction over its gathering facilities.

## II. STANDARD OF REVIEW

This case is on appeal from an order entered by the PSC. In this regard, this Court has held that

> [t]he detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper." Syl. Pt. 1, *Cent. W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993).

Syl. Pt. 2, *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 827 S.E.2d 224 (2019). With this standard in mind, we proceed to address the parties' arguments.

5

## III. DISCUSSION

This appeal presents a single issue of whether the PSC properly exercised jurisdiction in the matter below. Equitrans contends that it did not because the PSC has allegedly divested itself of jurisdiction over "gathering facilities" by its promulgation of a legislative rule that states gathering facilities are not "public utilities or intrastate pipelines." *See* W. Va. C.S.R. § 150-16-2.10. The respondents contend that the PSC properly exercised jurisdiction below, arguing that: (1) despite the legislative rule, Equitrans is operating as a public utility under *Boggs v. Pub. Serv. Comm'n of W. Va.*, 154 W. Va. 146, 174 S.E.2d 331 (1970); (2) the gathering line at issue in this case is an "intrastate pipeline" under West Virginia Code § 24-3-3a (2018); and (3) Equitrans' parent company consented to jurisdiction when it executed the Crawford Affidavit in 2007. We agree with the respondents' first argument and conclude that the PSC properly exercised jurisdiction.[5]

---

[5] Because we resolve this matter pursuant to our decision in *Boggs*, we need not address the respondents' remaining arguments. That said, in light of the third argument that the Crawford Affidavit somehow constituted an agreement to jurisdiction, we find it necessary to reiterate that it is not possible to agree to subject matter jurisdiction. This Court has held for over a century that

> [c]onsent of parties cannot confer upon a court jurisdiction which the law does not confer, or confers upon some other court, although the parties may by consent submit themselves to the jurisdiction of the court. In other words, consent cannot confer jurisdiction of the subject-matter, but it may confer jurisdiction of the person.

Because this appeal revolves solely around the PSC's jurisdiction, we begin our analysis by summarizing the statutes defining the PSC's jurisdictional parameters. West Virginia Code section 24-2-1(a) (2018) provides, in relevant part, that "[t]he jurisdiction of the commission shall extend to all public utilities in this state and shall include any utility engaged in any of the following public services: . . . transportation of oil, gas, or water by pipeline[.]" *Id*. The term "public utility" is defined to "mean and include any person or persons . . . engaged in any business . . . which is, or shall hereafter be held to be, a public service." *Id*. § 24-1-2 (2018). The term "public service" is not defined in the statutory scheme or in this Court's caselaw.

In applying these statutes, this Court has set out several holdings further explaining the PSC's jurisdiction. First, we have noted that "[t]he Public Service Commission of West Virginia has no jurisdiction and no power or authority except as conferred on it by statute and necessary implications therefrom, and its power is confined to the regulation of public utilities. It has no inherent power or authority." Syl. Pt. 2, *Wilhite v. Pub. Serv. Comm'n of W. Va.*, 150 W. Va. 747, 149 S.E.2d 273 (1966). Moreover, we have explicitly stated that the PSC "would transcend its statutory jurisdiction, power and authority if it should undertake to exercise control over business

Syl. Pt. 2, *Yates v. Taylor Cnty. Ct.*, 47 W. Va. 376, 35 S.E. 24 (1900).

7

enterprises not falling within the classification of public utilities." *Eureka Pipe Line Co v. Pub. Serv. Comm'n of W. Va.*, 148 W. Va. 674, 683, 137 S.E.2d 200, 205 (1964).

Against this backdrop, Equitrans argues that the PSC has explicitly excluded gathering facilities like the one at issue in this case from the definition of "public utility" such that the PSC has divested itself of jurisdiction over gathering facilities on the whole. As authority for this argument, Equitrans cites to a 1987 legislative rule, West Virginia Code of State Rules section 150-16-2.10, which states:

> The term "gathering facilities" shall include all pipelines and related facilities used to collect the gas production of one (1) or more wells for the purpose of moving such production from the well(s) into the facilities of an interstate pipeline, a utility, or an intrastate pipeline. For purposes of these rules, *gathering facilities shall not be considered either public utilities or intrastate pipelines.*

*Id*. (emphasis added.) A cursory reading of this rule out of context could lead to the conclusion that gathering facilities are simply not public utilities, but it becomes clear that is not the case when one examines the statutory scheme under which the rule was promulgated and the order adopting the rule.

The PSC promulgated this rule under the authority granted to it by West Virginia Code section 24-3-3a, which sets out certain requirements for natural gas transportation. The authority underpinning this rule is set forth in section 24-3-3a(c), which states: "For reasons of safety, deliverability or operational efficiency the commission may, in its discretion, by rule or order, exclude from the requirements of this section any part of

8

any pipeline *solely* dedicated to storage, or gathering, or low pressure distribution of natural gas." *Id*. (emphasis added.) The express language of this statute does not, as Equitrans argues, permit the PSC to divest itself of jurisdiction over gathering facilities. Rather, the statute only permits the PSC to exempt certain facilities — those which are solely dedicated to gathering, storage, or low pressure distribution — from the requirements of that statute (and necessarily in its related rules). The parties have not cited to any authority, nor are we aware of any, which permits the PSC to alter its statutory jurisdiction by promulgating a legislative rule. Even assuming, arguendo, such authority exists, section 150-16-2.10 would not have operated to exclude the gathering line at issue in this case from the PSC's jurisdiction. This is so because the PSC can only exempt from those requirements facilities which are "*solely* dedicated to storage, or gathering, or low pressure distribution of natural gas"; the statute says nothing of lines that serve mixed purposes. W. Va. Code § 24-3-3a(c).

Despite Equitrans' arguments to the contrary, the record is replete with evidence that this gathering line is a mixed-use line performing both gathering services and distribution of natural gas to rural consumers via main line field taps. While Equitrans is not the distributor of the gas — meaning that it is not the utility selling the gas to those rural consumers — it facilitates that distribution via this gathering line. As discussed further *infra*, the record reveals that the line has served this dual purpose for several decades, including in the years preceding Equitrans' own existence. Moreover, Equitrans is obligated to continue facilitating that distribution as evidenced by the Crawford

9

Affidavit, wherein Equitrans' parent company agreed that "its affiliates and successors would not 'discontinue service to any customer served by a main line tap on production, transmission or gathering line or facility of any Equitable Resources affiliate or subsidiary or their successors' without obtaining PSC approval." Similarly, the Crawford Affidavit indicates that those affiliates and successors are bound to "make service available to all future applicants who would be entitled to natural gas or transportation service from such production, transmission or gathering pipelines or facilities[.]" Given that this line has been and continues to be a mixed-use line, we readily conclude that West Virginia Code section 24-3-3a(c) would not have permitted the PSC to exempt it from the requirements of that section, much less to divest itself of jurisdiction over this line.

We note that the PSC itself was aware of this when it promulgated W. Va. C.S.R. section 150-16-2.10 in 1987. In its order adopting that rule, the PSC stated succinctly that it retained "authority to regulate. . .[gathering] facilities on a case-by case basis." Pub. Serv. Comm'n, Gen. Ord., No. 228, at *8 (Mar. 8, 1987). The PSC explained: "As defined, gathering facilities shall not be considered either public utilities or intrastate pipelines. If subsequent issues arise concerning whether specific facilities are properly designated as gathering facilities, they will be addressed by the Commission." *Id.* at *10. From that language, we conclude that the PSC anticipated that some facilities proclaiming to be gathering facilities may, in fact, serve mixed purposes such that the PSC should retain its oversight of them. Given that the gathering line at issue here not only serves a mixed purpose, but one which extends to distribution of natural gas directly to consumers, it is

reasonable that the PSC would have sought to retain its regulatory authority over that facility. In fact, not only is it reasonable, but it is also consistent with this Court's jurisprudence.

For over a century, this Court has made clear that certain entities which would not normally come within the PSC's regulatory jurisdiction may be drawn into such jurisdiction when that entity becomes vital to the public welfare. Specifically, we held that

> [w]henever any business or enterprise becomes so closely and intimately related to the public, or to any substantial part of a community, as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business, it becomes subject for the exercise of regulatory power of the state.

Syl. Pt. 5, *Clarksburg Light & Heat Co. v. Pub. Serv. Comm'n of W. Va.*, 84 W. Va. 638, 100 S.E. 551 (1919). In this regard, there is no doubt that Equitrans' business has "become[] so closely and intimately related to the public" such that a substantial part thereof is "dependent upon the proper conduct" of its business. *Id.* This is so because Equitrans' lines at issue here are the sole source of natural gas for several thousand rural West Virginia consumers who would be left with no gas service whatsoever in the absence of proper operation of those lines. So, clearly, the PSC's exercise of its regulatory authority would be appropriate under those circumstances.

We have reiterated this principle several times over the years, and expanded upon it in with our holding in *Boggs* that

11

> [w]here the transmission line of a public utility has been used directly to serve retail rural consumers over a long period of time, such use constitutes a dedication of that line to the public service and such facility will continue to be so dedicated and the owner thereof will continue to operate as a public utility unless and until permission is obtained from the Public Service Commission to terminate such status.

154 W. Va. at 146, 174 S.E.2d at 332, syl. pt. 3. Like the case at bar, *Boggs* involved a natural gas transmission line that was once owned by a public utility, Ohio Valley Gas, and used to distribute gas to rural consumers. The line was later transferred to private, nonutility owner, Mr. Boggs. Despite that privatization, the line was still used to distribute natural gas to rural consumers via main line field taps, much like how Hope Gas distributes gas via Equitrans' gathering line. We concluded that because the line had been used to serve the public for a prolonged period (pre-1935 to at least 1970), the PSC had continuing jurisdiction over it, and Mr. Boggs, as its owner, would "continue to operate [it] as a public utility unless he obtain[ed] permission to terminate his status as such." *Id*. at 155, 174 S.E.2d at 337. So, by assuming control of the line which had previously been dedicated to the public service, Mr. Boggs implicitly agreed to operate as a public utility for the limited purpose of the continued operation of that line. He could only terminate his status in that regard with the PSC's approval. *See id*.

Here, the record readily reveals that the gathering line at issue has been used to serve rural West Virginia consumers for several decades, including more than twenty-five years under Equitrans' ownership, and several decades prior under Equitrans' predecessors, Equitable Resources and Equitable Gas Company. Because the line was

12

historically (and continues to be) used to serve rural consumers, it is dedicated to public service under *Boggs*. As such, the owner thereof continues to operate it as a public utility until the PSC terminates its public utility status. We have held that "[j]urisdiction of the Public Service Commission over a public utility will not be considered to be terminated unless the action of the Commission and the circumstances surrounding the case demonstrate clearly and unequivocally its intent to relinquish such jurisdiction." *Id*. at 146, 174 S.E.2d at 332, syl. pt. 1. To date, there has been no action by the PSC terminating this jurisdiction, nor have any circumstances "clearly and unequivocally" demonstrated its intent to relinquish that jurisdiction. *See id.* Therefore, we conclude that the PSC properly exercised jurisdiction over this matter under *Boggs*, and will continue to do so until it relinquishes such jurisdiction or the line is no longer dedicated to public service.

Having concluded that the PSC properly exercised jurisdiction over the gathering facility at issue in this matter below, we affirm.

## IV. CONCLUSION

For the foregoing reasons, we affirm the PSC's March 16, 2022, order.

Affirmed.